**MOTTOLESE v. KAUFMAN,**
District Judge.

No. 21334.

United States Court of Appeals
Second Circuit.

Argued May 2, 1949.

Decided July 6, 1949.

FRANK, Circuit Judge, dissenting.

———◆———

Delson, Levin & Gordon, New York City
(Harold F. Levin, Edward Marks and

Norman Moloshok, New York City, of counsel), for petitioner.

Sullivan & Cromwell and John G. Dorsey, New York City, for intervenor Marine Midland Trust Co.

Abraham M. Glickman, New York City (Samuel Levinkind, New York City, of counsel), for intervenor Securities Corporation General.

Before L. HAND, Chief Judge, and SWAN and FRANK, Circuit Judges.

L. HAND, Chief Judge.

This is a petition for mandamus to direct the respondent, Judge Kaufman, to proceed in due course with the hearing and trial of an action in the District Court for the Southern District of New York, between Mottolese, the petitioner, as plaintiff, and Harry Preston and others, as defendants. The petitioner sought by appeal to review the same order which this petition brings up; and although we dismissed the appeal last January,[1] we suggested that mandamus might be an appropriate remedy. The petitioner has followed that suggestion without, however, renewing her motion before Judge Kaufman. The action is a shareholders' derivative suit brought in the interest of the San-Nap-Pak Company, Inc., a New York corporation, against its directors, past and present, and a number of corporations alleged to have been concerned in the wrongs in question, which consisted of depredations upon the corporate treasury. It was commenced on July 7, 1948, at which time there was already pending in the state court an action, consolidated out of nine separate actions, all upon the same claims and against substantially the same defendants, but brought by separate shareholders. The first of these nine actions had been begun on June 30, 1947, and the other eight had followed before November 28 of that year, the date of the consolidation order. The attorneys for the plaintiff in the present action were the attorneys for the plaintiffs in a majority of the nine actions, and the state court made them attorneys in the consolidated action. On July 21, 1947, another shareholder, Turner—also represented by these attorneys—commenced an action in the District

———

[1] Mottolese v. Preston, 2 Cir., 172 F.2d 308.

Court of the Southern District of New York and on January 28, 1948, the same plaintiff commenced a second action, and these two have also been consolidated. Turner withdrew, and the complaints in the two Turner actions were ordered dismissed; but before any order had been entered, one, Martini, was allowed to intervene on November 8, 1948, and the action is still pending. A motion for a stay in this consolidated Turner action on the same grounds as that made in the case at bar is now pending undetermined before Judge Bondy, awaiting the outcome of this motion. Judge Kaufman, by an order entered November 22, 1948, stayed any further proceedings in the action at bar pending the determination of the consolidated action in the state court "without prejudice, however, to the right of the plaintiff to apply to vacate or modify the stay in event of any change in circumstances in, or affecting the action entitled Waterman Corporation et al. v. James J. Johnston et al. * * * which would make it inequitable to continue the stay." Before this order was entered the plaintiff had given notice of the taking of the depositions of three of the corporate defendants, which they had moved to vacate; and the order now before us directed that any further proceedings to take the depositions should be held in abeyance.

There can be no question that we have jurisdiction to proceed by mandamus, and, if the stay of the action was wrong, the writ should go,[2] for the issues that will be decided in the Consolidated Action will be almost certain to dispose of the case at bar. The real plaintiff in interest there and here is not the shareholder, but, as in all shareholders' derivative suits, the San-Nap-Pak Company; and a judgment in the state action, if indeed not an absolute bar in this action, would at least be an estoppel as to the controlling issues. Therefore, although the district court—and we upon appeal—would not formally lose jurisdiction over the case, it would come to us already decided in substance. Only by a present review of the order can that consequence be avoided; and the writ is necessary to our appellate jurisdiction, which otherwise may be defeated.

It is probably true that originally the statutory privilege of access to a federal court was regarded as absolute and indefeasible, no matter whether its exercise resulted in inconvenience, delay and expense to the defendant.[3] There can be no doubt, however, that this is no longer true. One of the many exceptions is when a critical issue in the federal action is the proper construction of a state constitution, or statute.[4] Other exceptions are when the federal action involves interference in the internal affairs of a corporation;[5] or when there is an adequate local administrative procedure provided by the state;[6] or when a federal action for a declaratory judgment is brought, "where another suit is pending in a state court presenting the same issues."[7] These are all instances of a discretionary power to stay the federal action, because a proper regard for the autonomy of the states makes that course desirable. However, the Ninth Circuit in Butler v. Judge of the United States District Court,[8] as we read its opinion, sustained a stay of the federal action, merely because the same issues were involved in an earlier action in the state court between the same parties; and the First Circuit in In Re President & Fellows of Harvard

[2] McClellan v. Carland, 217 U.S. 268, 30 S.Ct. 501, 54 L.Ed. 762.

[3] McClellan v. Carland, 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762; Kline v. Barke Construction Co., 260 U.S. 226, 239, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077; City of Ironton v. Harrison Construction Co., 212 F. 353, 355 (semble); Great North Woods Club v. Raymond, 6 Cir., 54 F.2d 1017.

[4] United States v. City of New York, 2 Cir., 175 F.2d 75; East Coast Lumber Terminal, Inc. v. Babylon, 2 Cir., 174 F.2d 106.

[5] Rogers v. Guaranty Trust Co., 288 U.S. 123, 53 S.Ct. 295, 77 L.Ed. 652, 89 A.L.R. 720.

[6] Commonwealth of Pennsylvania v. Williams, 294 U.S. 176, 55 S.Ct. 380, 79 L.Ed. 841, 96 A.L.R. 1166.

[7] Brillhart v. Excess Insurance Co., 316 U.S. 491, 495, 62 S.Ct. 1173, 1176, 86 L.Ed. 1620.

[8] 116 F.2d 1013.

College[9] proceeded upon the assumption that that power existed, although it thought that the discretion of the district court had been abused, principally, if not altogether, because the federal action came first. In Brendle v. Smith[10] Judge Rifkind stayed a shareholder's derivative suit in a situation similar to that at bar.

The power is well settled, when the earlier suit is also in a federal court. Landis v. North American Co.[11] recognized the general principle in language often quoted: "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Perhaps, when a plaintiff has already sued in a federal court, the question whether he shall be allowed to start suit in another federal court is of less importance than whether he shall have access to a federal court after he has sued in a state court. And yet the privilege of suing in a particular federal court is as absolute, in form at least, as the privilege of suing in any federal court. However that may be, the decisions of the Supreme Court in Gulf Oil Company v. Gilbert[12] and Koster v. Lumbermen's Mutual Insurance Co.[13] have settled it that a federal action depending in diverse citizenship is always subject to the plea, forum non conveniens; and from these it follows that a federal suit, which has been brought after a state suit, may be stayed, for we can see no difference in kind between the inconveniences which may arise from compelling a defendant to stand trial at a distance from the place where the transactions have occurred, and compelling him to defend another action on the same claim. For these reasons we think that the order on review was within the discretion of the district court, and the only question is whether in this instance that discretion was abused.

It is quite true, as was held in Meredith v. City of Winter Haven,[14] that a defendant must show some positive reason why the federal action should not be allowed to proceed, if he is to bar the plaintiff's privilege. On the other hand, equity has always interfered to prevent multiplicity of suits, and the same considerations which persuaded the state court to consolidate the nine actions there pending, make equally desirable a course as near to that as the law permits. Since the action cannot be consolidated with the Consolidated Action, it is proper to stay it, except as some reason appears why the claim cannot be as speedily and as effectively prosecuted in the Consolidated Action as here. As the case comes to us the result therefore depends upon the likelihood that the eventual decision will be reached earlier in the federal action, or that the order on review will deprive the plaintiff of procedural advantages which do not have equivalents in the state action. As to the first, there is nothing in the record to show that an earlier trial is more likely in the federal court than in the state court. Indeed, we take judicial notice of the fact that the non-jury docket in the Southern District of New York is in the neighborhood of eleven months in arrears. As to any procedural advantages in the federal court, the petition alleged that "the practice of taking depositions in the state court was restricted and cumbersome and subject to extensive delays by appeals"; and this the defendants have not denied. Moreover, it is true that the power to examine orally given under Rule 30(a), Federal Rules of Civil Procedure, 28 U.S.C.A., is more certain and simpler than the procedure under the Civil Practice Act and Rules of the Supreme Court of the State of New York.

As has already appeared, Judge Kaufman is holding "in abeyance" the motions of the three defendant corporations, to vacate un-

9 149 F.2d 69.

10 D.C., 46 F.Supp. 522.

11 299 U.S. 248, 254, 255, 57 S.Ct. 163, 166, 81 L.Ed. 153.

12 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055

13 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067.

14 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9.

der Rule 30(b) the notices which the plaintiff has served upon them under Rule 30(a); and we think that at some time and in some form the prosecution of the claim should have the advantage of privileges of examination before trial equivalent to those which the Federal Rules afford. On the other hand, no other advantages have as yet appeared which will accrue from the federal action; and it will be at once unnecessary and burdensome to allow it to go on to trial, if those privileges can be afforded the prosecution of the claim in the Consolidated Action. We think that they can be afforded if the following course is pursued.

If the defendants refuse to submit to as full examination in the state court as the plaintiff could obtain in the action at bar, the judge should decide the motions made under Rule 30(b) to vacate the notices served under Rule 30(a). If he grants the motions as a matter of federal procedure under Rule 30(b), we see no reason why he should take any other step in the action at bar, unless some other ground for intervention shall come up later. If on the other hand he denies the motions as a matter of federal procedure, the plaintiff should be allowed to proceed with the examinations. When these are concluded, if the defendants in the Consolidated Action are willing to consent, and do consent, to the use of them in that action, we see no occasion for any further steps in the case at bar. It is quite possible that, when Judge Kaufman held the motions "in abeyance," he meant to wait until it appeared that the defendants would not agree to examinations in the Consolidated Action equivalent to those which could be had under Rule 30. We do not mean to circumscribe his discretion in that regard in what we are now saying; very properly he will wish to known whether any decision of the motions is necessary before he makes it. If the defendants in the Consolidated Action refuse to allow the examinations, if and when taken, to be used in that action, this action should go forward; but on this record the petition is premature.

Petition denied.

FRANK, Circuit Judge (dissenting).

1. As my colleagues' opinion shows, there are now pending in the court below two stockholders' derivative suits against the defendants, based on the same claim, and asking the same relief, i. e., the Mottolese suit and the earlier Martini suit.[1] Plaintiff moved to consolidate those two suits, but one of the defendants successfully opposed that motion. Since, however, a stay of the Mottolese suit will be academic unless the Martini suit is also stayed, I take it that my colleagues are, in effect, directing Judge Bondy to stay the Martini suit. I shall therefore discuss the decision as if it involved a stay of the Martini suit.

The Martini suit was begun on July 21, 1947, less than three weeks after the first state-court suit was brought (July 2, 1947), and when no others were pending. At that time, no steps of any significance had been taken in the state-court suit, so that, practically, the situation was the same as if the Martini suit had been begun a day after the state-court suit. Since the Martini suit began, there have been merely pleading maneuvers in the consolidated state-court suit; so far as the record here shows, the pleadings there have not yet been settled and the case is far from being ready for trial.[2]

---

[1] As my colleagues' opinion states, the Martini suit was a consolidation of two suits originally brought by Turner; but he later dropped out, and the consolidated suit was continued by Martini, who was an intervenor.

[2] The original state-court action, Waterman Corporation v. Johnston, was commenced in the Supreme Court, New York County, on July 2, 1947. Similar suits were filed by other stockholders, and the actions in the state court were consolidated on November 28, 1947. The plaintiffs made a motion therein, returnable on May 28, 1948, for the appointment of a receiver and for injunctive relief. On September 16, 1948, — Misc. —, 85 N. Y.S.2d 462, Mr. Justice Pecora denied for the time being the appointment of a receiver, but enjoined the officers and directors of San-Nap-Pak from taking any acts other than in the normal course of the corporation's business. An order to that effect was entered October 11, 1948.

Thus the legal issue here boils down to this: A plaintiff begins an in personam suit in the state court in New York City against some defendants. The next day, another in personam suit, on the same claim against the same defendants,[3] is brought, under the diversity clause, in the federal district court in the same city. Has the federal district court, on these facts alone, discretion, on defendant's motion, to grant a stay of the federal suit, at a time when the state-court suit is not yet ready for trial? My colleagues say that it does, although they concede that the stay will kill off the federal suit for all practical purposes (excepting only, under a condition now prescribed by my colleagues, the limited purpose of affording plaintiff aid in discovering some evidence for use in the state-court suit).

That decision goes a long way towards wiping out a substantial part of the diversity of citizenship jurisdiction of the federal courts, a jurisdiction with roots deep in our national history, a jurisdiction conferred because of a highly cherished policy. My colleagues' decision is without precedent in any decisions of the Supreme Court or of any circuit court (including this court). Indeed, it is directly against the teaching of all such decisions including one rendered by my colleagues i. e., Krauss Bros. Lumber Co. v. Louis Bossert & Sons, 2 Cir., 62 F.2d 1004, 1006.

In support of their ruling, my colleagues rely on (1) the doctrine of forum non conveniens and (2) that of multiplicity of suits. Combining these doctrines, they conclude that merely the inconvenience to defendants of possibly defending two actions, one in a federal and one in a state court in the same city, suffices to justify staying the federal action, unless the plaintiff shows that that inconvenience to the defendants is outweighed by disadvantages to him which will flow from the stay. Thus my colleagues put on the plaintiff the burden of showing why his federal suit should not be stayed. The Supreme Court, I think, has decided that precisely the contrary is the applicable rule.

In Landis v. North American Company, 299 U.S. 248, 255-256, 57 S.Ct. 163, 166, 81 L.Ed. 153, the Court said that "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward. * * *" And there—although both suits were in the federal courts —the Supreme Court sanctioned a stay only because the issue was one of "extraordinary public moment." Even so, said the court, "the burden of making out the justice and wisdom of a departure from the beaten track lay heavily" on the defendant seeking the stay. In Meredith v. City of Winter Haven, 320 U.S. 228, 234-235, 64 S.Ct. 7, 11, 88 L.Ed. 9, the Court said: "The diversity jurisdiction was not conferred for the benefit of the federal courts or to serve their convenience. Its purpose was generally to afford to suitors an opportunity in such cases, at their option, to assert their rights in the federal rather than in the state courts. In the absence of some recognized public policy or defined principle guiding the exercise of the jurisdiction conferred, which would in exceptional cases warrant its non-exercise, it has from the first been deemed to be the duty of the federal courts, if their jurisdiction is properly invoked, to decide questions of state law whenever necessary to the rendition of a judgment. Commonwealth Trust Co. v. Bradford, 297 U.S. 613, 618, 56 S.Ct. 600, 601, 80 L.Ed. 920; Risty v. Chicago, R. I. & P. Ry. Co., 270 U.S. 378, 387, 46 S.Ct. 236, 240, 70 L.Ed. 641; Kline v. Burke Construction Co., 260 U.S. 226, 234-235, 43 S.Ct. 79, 82, 83, 67 L.Ed. 226, 24 A.L.R. 1077; McClellan v. Carland, 217 U.S. 268,

Meanwhile, on July 2, 1948 the plaintiffs moved for leave to bring in additional parties defendant and to serve a supplemental complaint. This motion was granted on September 13, 1948. On January 10, 1949 various motions addressed to the sufficiency of the complaint were denied by Mr. Justice Eder. This decision was appealed to the Appellate Division, First Department, which on April 12, 1949, 275 App.Div. 106, 87 N.Y.S.2d 467, rendered an opinion dismissing two causes of action as to certain defendants, with leave to the plaintiffs to amend.

[3] In the consolidated state-court suit, there are some defendants who are not defendants in the federal court.

281-282, 30 S.Ct. 501, 504, 505, 54 L.Ed. 762. When such exceptional circumstances are not present, denial of that opportunity by the federal courts merely because the answers to the questions of state law are difficult or uncertain or have not yet been given by the highest court of the state, would thwart the purpose of the jurisdictional act." See also Commonwealth Trust Co. v. Bradford, 297 U.S. 613, 56 S.Ct. 600, 80 L.Ed. 920; Princess Lida v. Thompson, 305 U.S. 456, 465-467, 59 S.Ct. 275, 83 L.Ed. 285, cf. Propper v. Clark, 69 S.Ct. 1333. In many cases, the federal circuit courts have held that federal diversity suits may not be stayed in favor of pending state-court suits, where the facts were like (or stronger than) those before us here. See, e. g., Krauss Bros. Lumber Co. v. Louis Bossert & Sons, 2 Cir., 62 F.2d 1004, 1006; North Woods Club v. Raymond, 6 Cir., 54 F.2d 1017, 1018; Miami County Nat. Bank v. Bancroft, 10 Cir., 121 F.2d 921, 924; Asiatic Petroleum Corp. v. Italia Societa, etc., 3 Cir., 119 F.2d 610, 613; General Outdoor Advertising Co. v. Williams, 1 Cir., 12 F.2d 773; Consumers Gas Co. v. Quinby, 7 Cir., 137 F. 882, 893; Barber Asphalt Paving Co. v. Morris, 8 Cir., 132 F. 945; Defiance Water Co. v. City of Defiance, C.C.Ohio, 100 F. 178.[4]

As I read those Supreme Court and circuit court decisions, they come to this: (1) Presumptively a plaintiff has a right to maintain a federal diversity suit, notwithstanding an earlier state suit; (2) in very exceptional circumstances, however, the federal trial judge has discretion to grant a stay; (3) a defendant who asks a stay has a heavy burden of showing that such exceptional circumstances exist.

It is true, as my colleagues say, that since McClellan v. Carland, 217 U.S. 268, 30 S.Ct. 501, 54 L.Ed. 762, the Supreme Court has held that a stay of the federal suit is proper where the circumstances are exceptional. The exceptional circumstances recognized up to and including the most recent Supreme Court decisions are the following, enumerated by Judge Hand: (a) a critical issue in the federal action is the proper construction of a state constitution or statute (but cf. Propper v. Clark, supra, as to a state statute); (b) the state provides an adequate administrative procedure; (c) the federal suit seeks a declaratory judgment and a state suit is pending which presents the same issues; (d) the federal suit involves interference in the "internal affairs" of a foreign corporation (but cf. Koster v. Lumberman's Mutual Co., 330 U.S. 518 at page 527, 67 S.Ct. 828, 91 L.Ed. 1067). There are in the instant case no exceptional circumstances the same as or remotely resembling any of those thus heretofore recognized.

The sole fact to which my colleagues point as "exceptional" here is that the state suit commenced first. But never has that fact been regarded as enough. Whenever it has been urged as a ground for a stay, the upper federal courts have rejected it. See, e. g., Great North Woods Club v. Raymond, 6 Cir., 54 F.2d 1017; Krauss Bros. Lumber Co. v. Louis Bossert & Sons, 2 Cir., 62 F.2d 1004; Premier Malt Products Co. v. G. A. Ackerman Printing Co., 7 Cir., 24 F.2d 89; Byrd-Frost, Inc. v. Elder, 5 Cir., 93 F.2d 30; General Outdoor Advertising Co. v. Williams, 1 Cir., 12 F.2d 773; W. Reeves Lumber Co. v. Leavenworth, 5 Cir., 248 F. 686; Holmes County v. Burton Const. Co., 5 Cir., 272 F. 565; Boston & M. R. R. v. Dutille, 1 Cir., 289 F. 321; Barber Asphalt Paving Co. v. Morris, 8 Cir., 132 F. 945, 948-949; Consumers Gas Co. v. Quinby, 7 Cir., 137 F. 882, 893; cf. Commonwealth Trust Co. v. Bradford, 297 U.S. 613, 56 S.Ct. 600, 80 L.Ed. 920; Grubb v. Public Utilities Comm., 281 U.S. 470, 476, 50 S.Ct. 374, 74 L.Ed. 972.

Of particular interest is Krauss Bros. Lumber Co. v. Louis Bossert & Sons, 2 Cir., 62 F.2d 1004, 1006. There the plaintiff had begun a suit in the state court some six months before he began the federal suit. The state suit was at issue and on the trial calendar when defendant asked a stay of the federal suit.[5] Yet Judge Learned Hand, with Judge Swan's concurrence,

---

[4] See also cases cited in 1 C.J. 87 note 22; 1 C.J.S., Abatement and Revival, § 67, page 101 note 85.

[5] These record facts were set forth in detail in defendant's brief in that case.

refused to abate the federal suit. That decision was rendered in 1933.[6] My colleagues point to no intervening decisions of this court or of the Supreme Court to explain their shift of position. True, since that date there have been decisions holding that unusual facts do permit the exercise of discretion in staying such a federal action; but, I repeat, there has been no intimation that the mere chronological priority of the state action is enough. The doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, will not serve as an explanation, in the light of Meredith v. City of Winter Haven, supra; cf. Propper v. Clark, 69 S.Ct. 1333.

Neither of the two decisions in other circuits cited by my colleagues employed or even discussed any distinction between a case where the state-court action is begun before and one where it is brought after the federal action: (1) In In re President and Fellows of Harvard College, 1 Cir., 149 F.2d 69, the court held the stay improper because the circumstances were not exceptional; there is nothing in the opinion indicating that the decision would have been otherwise if the state suit had been begun first. Significantly, the court, after citing with approval Great North Woods Club v. Raymond, 6 Cir., 54 F.2d 1017—a case where the state-court suit was prior in time—said: "The later decision in Erie R. Co. v. Tompkins, supra, has not weakened the authority of McClellan v. Carland, which was cited with approval in Meredith v. Winter Haven, supra (320 U.S. 228 at page 234)." [149 F.2d 73.]

(2) In Butler v. Judge, 9 Cir., 116 F.2d 1013, 1015, the two suits were not of the ordinary in personam type but involved the quieting of title to specific property. While the rationale of that decision is not entirely clear to me, the court did not suggest that it would have stayed the action if it had not involved specific property. Whether or not that decision was sound, it does not support my colleagues' position.

I cannot agree with my colleagues that the stay here can be brought within the forum non conveniens doctrine. I think that it is one thing (1) to dismiss a federal suit because of the serious "inconveniences which may arise from compelling a defendant to stand trial at a distance from the place where the transactions have occurred" (when, be it noted, the plaintiff can begin again in the federal court in another district) and quite another thing (2) to arrest a federal diversity suit because it will require the defendant "to defend another action on the same claim"—where both actions are brought in the very same place. To treat (1) and (2) identically, as my colleagues do, is, I say, to shift to the plaintiff the burden of proving that the stay is improper. In Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 843, 91 L.Ed. 1055, the Court said, as to the rationale of forum non conveniens: "There is a local interest in having localized controversies decided at home." [7] That rationale has no pertinence in this case.

Nor can I agree that the multiplicity-of-suits doctrine is applicable. There is now but one suit pending in the state court. There are two in the federal court, only because (as earlier noted) one of the defendants successfully opposed plaintiff's motion to consolidate the Mottolese and Martini suits; as they ought now be consolidated, and are not thanks solely to a defendant's objection, we should treat the case as if there were but one state and one federal action. The pendency of but a single other suit would, at best, be a slim basis for invoking the multiplicity doctrine. More to the point, it has never been invoked in a context such as that here. If there is the requisite "multiplicity" here, there was fully as much "multiplicity" in the Krauss Bros. case, supra, where the state suit was set for trial but my colleagues refused to abate the later federal suit. And what of the cases cited above where other circuits have ruled similarly?

2. Even assuming, arguendo, that plaintiff has the burden my colleagues put upon him, I think he has borne it. For he has pointed to the notorious fact that, in the

---

[6] See remarks by Judge L. Hand, in Bryant v. Atlantic Coast Line Co., 2 Cir., 92 F.2d 569, 571 decided in 1937.

[7] See also Koster v. Lumberman's Mutual Insurance Co., 330 U.S. 518, 524-526, 67 S.Ct. 828, 91 L.Ed. 1067.

New York courts, the procedure for examination before trial is far less satisfactory than in a federal court. Not only have learned commentators so explained,[7a] but so also has an official New York body, the Judicial Council; for several years the Council has unsuccessfully urged legislation to remedy some of those glaring defects of the state procedure, defects which have caused much litigation.[8] The defects are most notable in the First Department, where the state-court suit against the defendants here is pending.

Among the weaknesses of the state procedure is this: A pre-trial examination is allowed only on an affirmative showing that each item of the examination is "material and necessary";[9] under the Federal Rules the deponent may be examined regarding any matter "relevant to the subject matter involved in the pending action," a phrase which has not received any restrictive interpretations similar to those given by the New York courts to the word "necessary." In a suit like this, where it is likely that none of the relevant facts are within the personal knowledge of the stockholder plaintiffs, full examination before trial is vital.[10]

On these facts alone, I think the stay should have been denied (especially as the plaintiff has stated her willingness to stipulate that there will be no duplication of pre-trial testimony in the state and federal courts). Moreover, in the state court, many interlocutory appeals are permitted, as a matter of right,[11] so that the course of an action there is far more cumbersome. Illustrative is the fact that, in the very state suit here, there has already been an interlocutory appeal from an order denying motions to dismiss the complaint. As experience shows, the delays resulting from such appeals[12] will in all probability more than offset any delay in the federal suit due to the crowded docket in the Southern District of New York.[13]

It is also pertinent that the state law does not guarantee as complete protection as the federal to the stockholders who do not be-

[7a] See, e.g., Saxe, Examinations Before Trial in New York, 36 Law Lib.J. (1943) 112.
Compare the remarks of Mr. Justice Lumbard in Peyton v. Coulson, 190 Misc. 754, 74 N.Y.S.2d 730, 732: "This case is an illustration of the need for revision of the antiquated New York law respecting examinations before trial. These litigants have been required to add three applications to an already congested motion calendar in order to obtain relief which would be available under the more efficient Federal Rules of Civil Procedure without any application to the court * * *."
See also Tremblay v. Lyon, 176 Misc. 906, 29 N.Y.S.2d 336, 340, where, in denying plaintiff the right to examine defendant before trial, the court said: "Under the new Federal Rules of Civil Procedure, Rules 26 and 30, 28 U.S.C.A. following section 723c, such an examination would be granted as of course."
[8] See New York Judicial Council, 8th Annual Report (1941) 361-377.
[9] New York Civil Practice Act, § 288 provides: "Any party to an action in a court of record may cause to be taken by deposition, before trial, his own testimony or that of any other party which is material and necessary in the prosecution or defense of the action. * * * Any party to such an action also may cause

to be so taken the testimony of any other person, which is material and necessary, where such person is about to depart from the state, or is without the state, or resides at a greater distance from the place of trial than one hundred miles, or is so sick or infirm as to afford reasonable grounds of belief that he will not be able to attend the trial, or other special circumstances render it proper that his deposition should be taken."
[10] See Hornstein, Legal Controls for Intracorporate Abuse, 41 Col.L.Rev. (1941) 405, 416-422.
[11] N. Y. C. P. A. § 609. I favor amendments to the federal statutes allowing many kinds of interlocutory appeals within the discretion of the upper courts.
[12] For a convincing brief picture of the dilatory character of such appeals, see the annotations to Sections 588, 589 and 609 of the New York Civil Practice Act.
[13] Apart from the argument of delay, that condition of the docket deserves no consideration here. Congress did not say that the right to prosecute a federal diversity of citizenship suit should depend on the number of district judges available. The problem of a paucity of district judges should be met directly—by asking Congress to authorize the appointment of more judges in the Southern District. A bill to that effect is now pending. I sincerely hope it passes

come parties to the action. Rule 23(c) of the Federal Rules of Civil Procedure expressly requires that before a derivative action in the federal court can be dismissed or compromised, notice of the proposed dismissal or compromise shall be given to all stockholders in such manner as the court directs. In the New York courts, on the other hand, while the compromise or dismissal is subject to the judge's approval, there is no law requiring [13a] notice to the stockholders who have not appeared in the action. This is most important, for the compromise of the suit will generally bar subsequent derivative actions on the same facts, and if the stockholders are not notified of the settlement, they may lose their rights without ever having known of them.

Instead of concluding that, all else aside, the procedural disadvantages in the state court rendered it clearly an abuse of the trial judge's discretion to stay this suit, my colleagues resort to a roundabout technique to bolster his order. They say that the order may stand on the basis of a condition not imposed by the trial judge, i. e., that the defendants in the state court consent to the use in that suit of any answers to pre-trial questions properly put to the defendants in the federal suit. Thus the sole remaining purpose of the federal suit is to aid in discovery of facts for use in the state court. This is a novel suggestion. Indeed, whenever it has appeared to a district judge that the sole purpose of a federal suit was to aid discovery of evidence for use in a state suit, discovery has been denied. De Seversky v. Republic Aviation Corp., D.C., 2 F.R.D. 183; Empire Liquor Corp. v. Gibson Distilling Co., D.C., 2 F.R.D. 247; Bachrach v. General Investment Corp., D. C., 31 F.Supp. 84; Snap Lite Corp. v. Stewart Warner Corp., D.C., 40 F.Supp. 776.

However that may be, the condition imposed by my colleagues, if satisfied, will not cure the defects in the state procedure: (1) It will not preclude many interlocutory appeals *as of right* by the defendants in the state suit. (2) It will not ensure notice to all stockholders of a settlement. (3) Most important, it will not give plaintiff the same freedom he would have in the federal court to examine, before trial, persons other than defendants in the federal suit. A plaintiff in the state court is in that respect particularly hamstrung; in general, he can there, before trial, examine such persons only by demonstrating that they will not be available as witnesses at the trial.

Consider, then, the complications which may ensue. If the plaintiff desires to examine before trial any non-defendants who will be available at the trial, he will have to apply to the federal district court; presumably that court will permit such examination on condition that the defendants in the state suit consent that the testimony of such non-defendants may (if relevant) be used in that suit. Thus the intertwining of the two suits will yield more complications than would occur if the federal action were allowed to continue wholly unrestricted.

This also should be noted: There are some persons who are defendants in the state suit but not in the federal suit. As to them, my colleagues' condition will leave plaintiff hampered. For pre-trial examination of those persons, since they are not parties to the federal suit, will be governed by the narrower state rules as to non-parties, whereas, were the federal suit to continue unrestricted, those persons could be examined freely.

My colleagues indicate that, after all, no harm is done to plaintiff by the stay because he can at any time apply for its modification, if the state suit is delayed or the stay becomes more oppressive than it now is. In the Landis case, the Court answered a similar suggestion by saying that "to drive a plaintiff to that course is to make him shoulder a burden that should be carried by" the defendant asking the stay, and that an improper order "is not to be up-

---

promptly, in order to relieve the overworked trial judges, whose tasks are more complex and arduous than those of the circuit judges. But there is nothing to commend efforts to reduce work through emasculating interpretations of the judicial code.

[13a] Rule 8 of the New York Rules of Civil Practice authorizes, but does not require, such notice.

held * * * because conceivably the court that made it may be persuaded at a later time to undo what it has done." [14]

I think we should direct that the motion for a stay be denied and that this action be consolidated with the pending Martini action.

[14] 299 U.S. at page 257, 57 S.Ct. 163, 81 L.Ed. 153.