**UNITED STATES of America**

v.

**WESTERN ELECTRIC COMPANY, Incorporated, and American Telephone & Telegraph Company, Components, Inc., Appellant.**

**No. 17591.**

United States Court of Appeals
Third Circuit.

Argued April 10, 1969.

Decided May 7, 1969.

Rehearing Denied June 6, 1969.

Edward S. Irons, Irons, Birch, Swindler & McKie, Washington, D. C. (Norman Bruck, Newark N. J., Rosen & Steinhilper, Chestnut Hill, Mass., Gene W. Stockman, Washington, D. C., on the brief), for appellant.

Donald B. Kipp, Pitney, Hardin & Kipp, Newark, N. J., for appellee.

Before HASTIE, Chief Judge, and GANEY and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This appeal is from an October 14, 1968, order of the District Court dismissing after a hearing, for lack of jurisdiction without prejudice, the "application of appellant, Components, Inc., for a determination of reasonable royalties pursuant to the provisions of Section X(B) of the Final Judgment of this Court entered on January 24, 1956 * * *.".

The United States commenced antitrust proceedings in the District Court in 1949 against certain defendants, including Western Electric.[1] A consent judgment was entered in 1956. Its Section X provides, in relevant part:

"(A) The defendants are each ordered and directed to grant or cause to be granted, to any applicant who shall make written application therefor at any time or from time to time, nonexclusive licenses under all claims of any, some or all existing and future Bell System patents to make, have made, use, lease and sell any or all equipment as desired by the applicant, such licenses * * * (3) to be at reasonable royalties to all persons under all other existing and future Bell System patents; * * *.

1. United States of America v. Western Electric Co., Inc. and American Tele-

phone and Telegraph Co., Civil Action 17-49 (Dist. N. J.).

\* \* \* \* \* \*

"(B) Upon receipt of a written request for a license under the provisions of this Section, the defendant to whom such request is addressed shall advise the applicant in writing of the royalty, if applicable, which it deems reasonable therefor, \* \* \*. If the parties are unable to agree within ninety (90) days upon reasonable royalties or any other terms, the applicant or such defendant may apply to this Court for the determination of reasonable royalties and other terms, \* \* \*. Pending final determination of the foregoing, the applicant or said defendant may apply to this Court to fix interim royalty rates and other interim terms and conditions."

Components, Inc., which was not a party to the consent judgment, applied to Western for a patent license to produce capacitors. An agreement was negotiated and signed in 1960, granting Components certain non-exclusive licenses at stated royalties, "said royalt[ies], however, not becoming due and payable until a patent issued on the licensed applications". In 1958, however, the United States Patent Office had declared an Interference between a Western patent application which was subject to the 1960 agreement and an application held by the Sprague Electric Company as assignee.[2] The Interference proceedings culminated in 1962 with the granting of a patent

to Sprague, which substantially fulfilled its application. Narrower patents were granted to Western in 1963 and 1965 deriving from its original application. Components entered into a separate licensing agreement with Sprague in 1964 for its 1962 patent at a stated royalty. Western, upon the issuance to it of the 1963 and 1965 patents, reduced the royalty payable by Components under their 1960 agreement.[3]

Despite the reductions, Components apparently continued to maintain that the royalty payable to Western was too high, and none has ever been paid. Western finally brought suit in May 1968 against Components in a Delaware state court for an accounting and specific performance of the 1960 licensing agreement.[4] Two months later, in July 1968, Components filed its application in the District Court, requesting determination of a reasonable royalty under the agreement, an opportunity to engage in discovery, and an injunction against the Delaware action. The District Judge denied the application and dismissed it for lack of jurisdiction, without prejudice.[5]

Assuming that the 1960 licensing agreement is unenforceable, as alleged in Components' application, and assuming further that the required "written request" was received by Western,[6] Components nevertheless failed to bring itself within Section X(B) by not apply-

---

2. Components claims that it was unaware of this fact when it entered into the 1960 agreement. For reasons which shall presently appear, this factor is irrelevant to our decision. See pages 4–5 below.

3. Components' application alleges that this reduction was "unilateral" and its counsel argued to us that it constituted a "repudiation" of the agreement. This factor will be seen to be irrelevant to our decision; see footnote 2, *supra.*

4. Western Electric Co., Inc. v. Components, Inc., Civil Action 2820, Delaware Ct. of Chancery, Components has filed no answer in this action, a stay having been granted in December 1968 pending the outcome of the appeal now before us.

5. This order also disposed of certain motions relating to discovery. Components had served subpoenas and a notice of tak-

ing of depositions upon Western, which had moved to quash the subpoenas and to set aside the notice. Components had then moved to stay the hearing on its original application until completion of discovery. These motions were declared moot by the order of dismissal.

6. The application fails to allege that the "written request" required by Section X (B) of the consent judgment was received by Western, and counsel for Components conceded at oral argument before us that no formal written request for a license had been served. We express no opinion as to whether Components' application to the District Court would suffice under X (B) as such a request, as contended by counsel.

In an opinion dated 2/26/68, the District Court denied an application of a dis-

ing for a determination of reasonable royalties for the *future*.[7] Though the Section is not expressly limited to future royalties, we will not give the provisions of an antitrust consent judgment "a reading [which] ignores both context and good sense." See United States v. American Society of Composers, A. & P., 331 F.2d 117, 121 (2nd Cir.), cert. den. 377 U.S. 997, 84 S.Ct. 1917, 12 L.Ed.2d 1048 (1964). Since the language of Section X(B) postulates a "written request for a license," an "applicant," and circumstances where the parties are "unable to agree * * * upon reasonable royalties or any other terms," its language is clearly addressed to situations where the failure to conclude a licensing agreement warrants judicial determination of what its terms should reasonably be so that the parties may commence performance. By contrast, Components' allegation in its application that it had sought since 1963 to reach agreement with Western on a

reasonable royalty,[8] taken in conjunction with the undisputed fact that no royalties have been paid under the 1960 agreement, indicates that the request for a judicial determination of reasonable royalties was directed to the past, namely, the period from 1963 to the time the application was filed. To this extent, it was properly dismissed for lack of jurisdiction. Cf. Maul Bros., Inc. v. Emhart Corporation, 356 F.2d 628 (6th Cir. 1966); United States v. American Society of Composers, A. & P., *supra*. However, the dismissal was without prejudice, and Components need not be precluded from applying for a determination of future royalties if it otherwise alleges facts which bring it within the requirements of Section X(B).[9] As to past royalties, Components will be free to litigate their reasonableness in Western's suit brought in the Delaware state courts.[10]

The order of the District Court will be affirmed.

---

tributor of private communication systems to intervene in this action on the ground that the Government had refused to enforce the consent decree of January 24, 1956. See United States v. Western Electric Company, Incorporated, et al.—Application of Clark Walter & Sons, Inc., (D.N.J., C.A. 17-49), aff'd. sub nom. Clark Walter & Sons, Inc. v. United States, 392 U.S. 659, 88 S.Ct. 2286, 20 L. Ed.2d 1348 (1968).

7. Since the enforceability of the 1960 licensing agreement is irrelevant to our decision, discussion of Components' alleged right to discovery on the point is unnecessary.

8. Paragraph (8) of its application alleges that:
"Components, Inc. has never accepted the reduced royalty rates as unilaterally proposed by Western Electric in the aforementioned letters of December 4, 1963 and October 4, 1965 * * *. *Per contra*, Components, Inc. deeming the proposed royalties to be unreasonable, has been engaged in negotiations virtually continually since the issuance of patent 3,093,883 on June 18, 1963 in an attempt to reach agreement by compromise and settlement as to a reasonable royalty in the premises."

9. Thus the District Judge stated:
"The final judgment did not contemplate review of license agreements that

were entered upon and retroactive considerations of reasonableness of royalties demanded in those agreements. It may be in the future—although it is not necessary for the Court to pass upon that now—if there were no contract between Components and Western Electric and Components made application for a license agreement, and if on consideration of that application and the terms of the agreement reasonable royalties could not be agreed upon, it may be that under such a state of facts that Components could seek the aid of this Court, but it would be only for the purpose of royalties to be paid in the future, not for a review of past performance."
It is noted that Components' application failed to allege that the parties were "unable to agree" with respect to future royalties, and, as noted in footnote 6, *supra*, also failed to allege a "written request."

10. Even assuming that Section X(B) contemplates a determination of past royalties, it would appear unwise, for reasons of sound judicial administration and "a proper regard for the autonomy of the states," to preempt that previously filed state action in which Components is assured of a hearing as to the matters raised in its application to the District Court. See Mottolese v. Kaufman, 176 F.2d 301, 302 (2nd Cir. 1949); cf. United States v. Libbey-Owens-Ford Glass Co., 1955 CCH Trade Cases, ¶ 68,207 (N.D.Ohio 1955).