Juanita S. TRIMMEL a/k/a Juanita S. Dennis

v.

GENERAL ELECTRIC CREDIT CORPORATION, et al.

Civ. No. H–81–980.

United States District Court, D. Connecticut.

Jan. 17, 1983.

Robert J. Kor, Neighborhood Legal Services, Inc., Hartford, Conn., for plaintiff.

Paul L. Otzel, Kapusta & Otzel, Milford, Conn., Joseph S. Rachlin, Hartford, Conn., Jonathan J. Einhorn, Berdon, Young & Einhorn, New Haven, Conn., for defendants.

RULING ON DEFENDANT GENERAL ELECTRIC CREDIT CORPORATION'S MOTION TO STAY FEDERAL PROCEEDINGS

BLUMENFELD, Senior District Judge.

Defendant General Electric Credit Corporation moves to stay federal proceedings pending resolution of state suits. Motion denied.

## PROCEDURAL HISTORY

In June 1978, Trimmel executed a note, and a mortgage on her residence to secure the note, to Residential Construction Company (RCC), as part of a contract with RCC for repairs and improvements to her residence. RCC subsequently assigned the mortgage to General Electric Credit Corporation (GECC).

In November 1980, GECC sued Trimmel in state court for mortgage foreclosure. Trimmel unsuccessfully moved to dismiss, based on RCC's noncompliance with the Connecticut Home Solicitation Sales Act (CHSSA), Conn.Gen.Stat. §§ 42–134 to 42–143 (1981). Trimmel then sued GECC and RCC in state court in May 1981, alleging violations of CHSSA and the Connecticut Unfair Trade Practices Act (CUTPA), Conn.Gen.Stat. §§ 42–110a to 42–110q (1981) as well as the tort of misrepresentation. Trimmel then sued GECC and RCC in this court, in December 1981, alleging violations of the Truth-in-Lending Act, 15 U.S.C. §§ 1601–1667e (1976 & Supp.V 1981), seeking rescission and damages under sections 1635 and 1640 respectively. Defendants have moved for a stay of federal proceedings while the state actions proceed.

## DISTRICT COURT'S DISCRETION TO STAY

A federal district court's discretion to stay proceedings is an evolving, judge-made doctrine. "It is probably true that originally the statutory privilege of access to a federal court was regarded as absolute and indefeasible, no matter whether its exercise resulted in inconvenience, delay and expense to the defendant." *Mottolese v. Kaufman,* 176 F.2d 301, 302 (2d Cir.1949) (L. Hand, C.J.) (footnote with citations omitted). Courts have, however, fashioned various grounds for a stay. *Id.* at 302–03.

One ground for a stay is that state proceedings presenting the same issues are in progress. *See generally* Annot., 5 A.L.R. Fed. 10 (1970 & Supp.1982). In such a case, a district court has considerable discretion in whether to stay or proceed. The Second Circuit in *Mottolese* upheld a stay of a shareholder's derivative suit, filed in federal court under diversity jurisdiction, when oth-

er suits concerning the same company and based on the same issues were pending in state courts, *id.* at 301. The court, while assuming that a defendant requesting a stay "must show some positive reason," noted that "equity has always interfered to prevent multiplicity of suits." *Id.* at 303.

The result in *Mottolese* might be thought to depend on peculiar facts. The federal jurisdiction arose from diversity, and the suit concerned corporation law, which is peculiarly suited to decision by state court; nine state suits had been filed and multiple federal litigation was threatened, *id.* at 301–02; and the state suit was likely to be completed sooner, *id.* at 303, rendering the federal suit pointless. However, the Second Circuit in *P. Beiersdorf & Co. v. McGohey,* 187 F.2d 14, 15 (2d Cir.1951), upheld a stay on more austere facts. Beiersdorf sued Duke Laboratories in federal court for trademark infringement, breach of contract, and an accounting. Two months earlier, Duke Laboratories had sued Beiersdorf in state court for a declaratory judgment that Duke had not infringed certain trademarks, that Duke owned the trademarks, and that Duke's contract with Beiersdorf was either invalid or fully performed. In this suit, the district court had federal question jurisdiction, the suit did not involve corporation law, only one state and one federal action had been filed, and the likelihood of the federal suit finishing first was not discussed. The Second Circuit let stand a district court stay on authority of *Mottolese* without comment on any of the factual differences, though the dissent used most of them to distinguish *Mottolese, id.* at 16–17.

*Beiersdorf* does not, however, compel a stay whenever state proceedings arising out of the same occurrences are involved.[1] First, the Second Circuit in *Beiersdorf* did not hold that a stay was required, but mere-

ly upheld the trial court's discretion in granting one. Further, the case at bar is less appealing as a subject for a stay than *Beiersdorf* appears to have been. The federal and state actions in *Beiersdorf* seemed exactly parallel, with identical issues being litigated in each. The case at bar will be shown to be different. In addition, though the issues in *Beiersdorf* involved both state and federal law, the state law issues may have been the more complex, making state court resolution more desirable. Again, the case at bar will be shown to be different.

■ The *Mottolese* and *Beiersdorf* cases grant considerable discretion to the trial court in granting stays based on concurrent state proceedings. This discretion " 'calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.' " *Mottolese,* 176 F.2d at 303 (quoting *Landis v. North American Company,* 299 U.S. 248, 254–55, 57 S.Ct. 163, 165–66, 81 L.Ed. 153 (1936). Various factors must be weighed. These factors have been classified in various ways. For example, the court in *Nigro v. Blumberg,* 373 F.Supp. 1206, 1213 (E.D.Pa.1974), listed these seven factors:

(1) considerations of comity; (2) promotion of judicial efficiency; (3) adequacy and extent of relief available in the alternative forum; (4) identity of parties and issues in both actions; (5) likelihood of prompt disposition in the alternative forum; (6) convenience of parties, counsel and witnesses; and (7) possibility of prejudice to a party as a result of the stay.

I find it convenient to consider factors under three headings: (1) relative desirability of federal and state forums; (2) efficiency; and (3) fairness to parties and balance of power.

---

1. In fact, Judge Friendly for the Second Circuit remarked fairly recently that "a federal court will usually not dismiss or even stay an action *in personam* because of a prior action pending in a state court." *Graziano v. Pennell,* 371 F.2d 761, 764 (2d Cir.1967).

## WHY A STAY IS NOT APPROPRIATE IN THIS CASE

■ Before applying these factors to the case at bar, I should make clear what the overall result would be of proceeding with the federal suit on the one hand or staying it on the other. Only with these two alternative results clearly in mind can I determine which one best furthers the policy goals.

If this court proceeds, there would be concurrent federal and state actions. The federal action would involve only Trimmel's federal Truth-in-Lending claims. The two state actions would involve GECC's state foreclosure claim as well as Trimmel's state claims based on misrepresentation and violations of CHSSA and CUTPA. Trimmel "has raised no Truth-in-Lending issues in state court." Plaintiff's Memorandum in Opposition to Defendant's Motion to Stay Federal Proceedings at 4.

■ The actions could continue in this manner, each ignoring the issues raised in the other. Trimmel need not fear that her failure to raise her Truth-in-Lending claim in state court will, after a state court judgment, bar her by res judicata from asserting that claim in this court. Federal courts generally afford a state judgment the same res judicata effect which that state would afford it. 28 U.S.C. § 1738 (1976); *Kremer v. Chemical Construction Corporation,* —— U.S. ——, ——, 102 S.Ct. 1883, 1887, 72 L.Ed.2d 262 (state court appeal of state administrative action barred federal suit on Title VII employment discrimination); *id.* at ——, ——, 102 S.Ct. at 1899, 1912 (dissents accept general res judicata rule but would find Title VII creates exception). Under Connecticut law, Trimmel's Truth-in-Lending claim is a permissive rather than

compulsory counterclaim to the state foreclosure action. E. Stephenson, *Connecticut Civil Procedure* § 129(a) (Supp.1979) (no counterclaims are compulsory under Connecticut practice); *see* Connecticut Practice Book § 124 (counterclaims in general are permissive); *cf.* Conn.Gen.Stat. § 52–139 (1981) (debt set-offs are permissive). With state law in this posture, federal courts would not bar Trimmel's Truth-in-Lending claim because she failed to assert it as a counterclaim in the state suit. *White v. World Finance of Meridian, Inc.,* 653 F.2d 147, 151 (5th Cir.1981).[2]

■ Similarly, GECC need not fear that its failure to raise counterclaims in this court will, after a judgment of this court, bar it by res judicata from asserting in state court the foreclosure claim which it has already raised there. Under federal law, a foreclosure claim is not a compulsory counterclaim to a Truth-in-Lending action. *Valencia v. Anderson Brothers Ford,* 617 F.2d 1278, 1291–92 (7th Cir.1980), *rev'd on other grounds,* 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981); *Whigham v. Beneficial Finance Company of Fayetteville, Inc.,* 599 F.2d 1322, 1323–24 & n.* (4th Cir.1979); *Ball v. Connecticut Bank and Trust Company,* 404 F.Supp. 1 (D.Conn.1975) (Newman, J., adopting opinion of Magistrate Latimer); *contra, Plant v. Blazer Financial Services, Inc.,* 598 F.2d 1357, 1364 (5th Cir.1979). Further, GECC's foreclosure claim in this case could not be a compulsory counterclaim in federal court, because it is the subject of a previously initiated state action. Fed.R. Civ.P. 13(a)(1). Given this state of federal law, it is most improbable that Connecticut, which in its own procedure considers counterclaims to be permissive, would bar GECC's foreclosure claim in state court because of a prior judgment of this court.

---

**2.** In fact, some federal courts would reject the argument of res judicata even if state law purports to make a Truth-in-Lending counterclaim compulsory. *Daughtrey v. First Bank and Trust Co.,* 435 F.Supp. 218, 219–20 (N.D.Ind. 1977) (holding that federal procedural law applies); *Wrisinger v. Wellington Bank,* No. 79–1108–CV–W–5 (W.D.Mo. May 22, 1980).

In sum, if this court proceeds, the claims would be split between federal and state court, with no need for any claim to appear in both forums. If on the other hand this court grants a stay, Trimmel would presumably raise her Truth-in-Lending claims in state court. All claims would then be heard there. Thus, in considering whether policy favors a stay, I must compare the two possible scenarios just described: either all claims litigated in state court (if this court grants a stay), or the Truth-in-Lending claim litigated here and all other claims litigated in state court (if this court does not grant a stay). I will now discuss how policy considerations make one or the other of these scenarios preferable. I will consider in turn the three policy headings mentioned above.

### A. Relative Desirability of Federal and State Forums

This factor disfavors a stay. First, for this court to proceed would not tread objectionably on the state court system. The ongoing state proceedings are purely private and do not involve "important state interests," *Middlesex County Ethics Committee v. Garden State Bar Association,* —— U.S. ——, ——, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). Thus, *Younger* abstention does not apply. Further, the federal suit involves no construction of state law, so various other abstention doctrines, notably *Pullman* abstention, do not apply.

Next, the federal suit involves federal law. Of course, state courts are bound to apply federal law, and generally a federal court must assume that a state court will do so faithfully. Further, in the case at bar, the state court is most unlikely to be unsympathetic to Trimmel's federal Truth-in-Lending claim, because Connecticut has a similar truth-in-lending statute. Truth-in-Lending Act, Conn.Gen.Stat. §§ 36–393 to 36–417 (1981). A federal forum is, however, preferable because the suit apparently involves at least one unsettled issue of federal law. If Trimmel should prevail on her claim for rescission, it is unclear whether Trimmel would be entitled merely to a restoration of the status quo ante, or also to a forfeiture from GECC and RCC.[3]

### B. Efficiency

This factor only slightly favors a stay, for concurrent federal and state proceedings would involve only slight duplication of effort. To show this, I will detail the issues in the two state actions and the one federal action pending.

The first state action is a simple foreclosure.

In the second state action, Trimmel has alleged the following violations of the Connecticut Home Solicitation Sales Act (CHSSA):

a. failing to provide executed copies of documents;

b. failing to provide seller's address on contracts;

---

**3.** 15 U.S.C. § 1635(b) (1976) and 12 C.F.R. 226.9(d) (1982) describe the procedure for return of property on both sides following the debtor's notice of rescission to the creditor. The aim is for each party to return what had belonged to the other, thus restoring the status quo ante. But if a creditor fails to comply with these provisions, then not only is he liable to return the debtor's property, but he additionally forfeits the right to his property held by the debtor. *Sosa v. Fite,* 498 F.2d 114, 119 (5th Cir.1974); *French v. Wilson,* 446 F.Supp. 216, 220 (D.R.I.1978); *but see Rollins v. Dwyer,* 666 F.2d 141, 144 n. 5 (5th Cir.1982) (questioning *Sosa*); *Gerasta v. Hibernia National Bank,* 575 F.2d 580, 584 n. 3 (5th Cir.1978) (questioning *Sosa*). It is not, however, clear whether this forfeiture rule applies if the debtor, in giving notice of rescission, did not explicitly offer to tender the property of the creditor which he held. *Compare Bustamante v. First Federal Savings and Loan Association,* 619 F.2d 360, 365 (5th Cir.1980) (no forfeiture) *with Carvalko v. Gorbach Properties, Inc.,* No. N-77-264 Civ., slip op. at 4-5 (D.Conn. May 9, 1979) (opinion by Magistrate Latimer, adopted by Judge Daly on May 29, 1979) (forfeiture granted). The case at bar apparently fits this fact pattern for which the law is unsettled. (Of course, this forfeiture issue is discussed here only in a tentative way.)

c. failing to provide the required notice on contracts of buyer's cancellation right;

d. failing to provide required cancellation forms;

e. failing to complete required cancellation forms;

f. failing to orally inform buyer of cancellation right;

g. misrepresenting buyer's right to cancel;

h. assigning *plaintiff's debt too soon* after contract execution.

State Complaint (in Appendix to Defendant's Memorandum in Support of Stay of Federal Proceedings), First Count ¶ 11, at 2–3. For these violations, Trimmel seeks to have the contracts and mortgage deed declared void under Conn.Gen.Stat. § 42–135a (1981).[4] Trimmel has further alleged the tort of misrepresentation. State Complaint, Third Count, at 4–5. For this count Trimmel seeks money damages, costs, and attorney's fees. Trimmel has further asserted that both the CHSSA violations and the misrepresentation constitute violations of the Connecticut Unfair Trade Practices Act (CUTPA).[5] State Complaint, Second and Fourth Counts, at 4, 5–6. For these counts, Trimmel seeks money damages, costs, and attorney's fees pursuant to Conn. Gen.Stat. § 42–110g (1981); for the CUTPA violations based on misrepresentation, Trimmel additionally seeks punitive damages and a voiding of the contracts and the mortgage deed pursuant to section 42–110g.

In this court, plaintiff alleges the following Truth-in-Lending violations:

a. failing to disclose clearly and conspicuously the credit billing procedure;

b. failing to disclose various credit terms in advance of extending credit;

c. failing to furnish the borrower with a duplicate of the instrument by which the disclosures' referred to in (b) were made;

d. failing to identify GECC as a creditor clearly on the contract;

e. failing to make certain disclosures near the customer's signature;

f. failing to identify security interests to be held and to clearly identify the property involved;

g. failing to provide the borrower with a copy of the mortgage deed;

h. failing to disclose the date on which the finance charge begins to accrue;

i. failing to disclose payment schedules;

j. failing to disclose prepayment penalties;

k. failing to identify the method of computing finance charges in the event of prepayment;

l. failing to deliver two copies of the required notice of opportunity to rescind;

m. making physical changes in the property, performing work, and making deliveries to customer's residence before the rescission period expired.

Complaint ¶ 11. Plaintiff alleges, as a further violation, that defendants failed to honor plaintiff's notice of rescission by returning money and terminating security interests. Complaint ¶ 15. Trimmel seeks rescission under 15 U.S.C. § 1635 (1976) and damages under 15 U.S.C. § 1640 (1976).

Though there may be some overlap between Trimmel's claims in the two suits,

4. Trimmel requests relief for each count on page 6 of the State Complaint.

5. CUTPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn.Gen.Stat. § 42–110b(a) (1981). The act directs courts, in interpreting this language, to be guided by the interpretations of a similar prohibition in the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) (1976). Conn.Gen. Stat. § 42–110b(b) (1981).

these claims are in the main different. This is not a case, as in *Davis v. Fidelity Trust Co.,* No. B–79–188 Civ., slip op. at 3 (D.Conn. Aug. 9, 1979) (opinion of Magistrate Latimer, adopted by Judge Daly on Aug. 27, 1979), in which by "voluntarily raising identical claims in the two court systems, plaintiff resembles the litigant who originally files parallel complaints."

## C. Fairness to Parties and Balance of Power

This factor disfavors a stay. First, since the state and federal proceedings have little overlap, Trimmel's federal suit is not unfair to defendants as "vexatious." On the other hand, since the state court would hear Trimmel's federal Truth-in-Lending claim, neither would it seem obviously unfair to Trimmel to stay the federal proceedings.

Sometimes, however, "fairness" is determined not so much from abstract principles as from pragmatic realities. For example, federal statutes dealing with labor-management relations have set up a regime in which labor and management each have certain powers, notably the right to use certain weapons, but not others, against each other. This allocation of power cannot be said to follow from abstract principles of what is "fair"; rather, it was the result of Congress' attempts through time to remedy perceived imbalances in power, as judged by the practical results of the balances in force. *See* D. Leslie, *Cases and Materials on Labor Law* 8–12 (1979).

The Truth-in-Lending Act also had a remedial purpose, to correct consumer ignorance in credit transactions and to protect the consumer against inaccurate and unfair practices. 15 U.S.C. § 1601 (1976). Sections 1635 and 1640 let consumers enforce the act by providing them with private remedies. The stronger these consumer weapons are, the more effective the enforcement will be. Given Congress' remedial purpose, I favor strengthening the consumer's weapon. Trimmel has asserted her Truth-in-Lending claim here rather than in state court because she felt it would give her some advantage. Absent good reason, I am loath to take that advantage away from her.

This concern to strengthen, rather than weaken, the consumer's remedy is apparent in the decisions cited above which hold that a creditor's counterclaim based on the debt owing is not a compulsory counterclaim in federal court to a debtor's Truth-in-Lending action. *Valencia,* 617 F.2d at 1292; *Whigham,* 599 F.2d at 1324. Both courts stressed that to permit such counterclaims "would impede expeditious enforcement of the federal penalty." Thus, tying the debtor's federal Truth-in-Lending claim in federal court to the creditor's state claims would unduly impair the effectiveness of the consumer's Truth-in-Lending remedies. By the same logic, forcing a party with a Truth-in-Lending claim to assert that claim only in state court, in which the creditor is already asserting state claims, would also unduly impair the effectiveness of the consumer's Truth-in-Lending remedies.

## CASE LAW DIRECTLY ON POINT

This court has previously denied a motion for a stay on similar facts. *Aiken v. First New Haven National Bank,* No. N–75–94 Civ. (D.Conn. Aug. 8, 1975) (opinion by Magistrate Latimer, adopted by Judge Zampano on Aug. 12, 1975). As in our case, defendant had "advanced no equitable considerations peculiar to the instant controversy" favoring a stay. The court then declined to grant a stay, for such a stay "would represent not a discretionary measure tailored to the individual case but acceptance of a flat rule of preclusion whenever the creditor sues first in state court." Slip op. at 2. I would add that, as a practical matter, the creditor will usually sue in state court before the debtor takes any legal action. Thus, to grant a stay here would in effect preclude almost all federal court consideration of Truth-in-Lending claims.

Two district courts have granted stays in circumstances similar to the case at bar, but their reasoning does not persuade me. In *Wheeler v. Adams Company,* 322 F.Supp. 645 (D.Md.1971), plaintiff asserted a Truth-

in-Lending claim while a previously filed state replevin proceeding was in progress. In granting a stay, the court stated:

> [N]othing in the Truth-in-Lending Act or in its legislative history gives any indication that the Congress intended that a federal court should, under a procedure which could roughly be analogized to removal, exercise the jurisdiction conferred by section 1640(e) to determine alleged violations of that Act with respect to one or more sale-purchase transactions which are themselves already the subject of a prior-instituted and pending state court replevin proceeding.

*Id.* at 659. But the analogy to removal is inapt because the state court retains jurisdiction to decide all issues of state law. The court in *Wheeler* feared an "avalanche of collection litigation in every federal court." *Id.* However, only Truth-in-Lending issues need be heard in federal court. Many plaintiffs may press such claims, but a federal court is a quite fitting place to hear them. Finally, the court in *Wheeler* feared that "there will also be, at the very least, a race to see which court, state or federal, first reaches the Truth-in-Lending issues." *Id.* In the case at bar, however, the state court is not considering Truth-in-Lending issues.

The court in *Washington v. Rothenberg,* 436 F.Supp. 699 (E.D.Va.1977), following *Wheeler,* noted that "the prosecution of this [federal] action would ... potentially interfere with the State court proceeding." However, I can see only one possible interference. Execution of the state court judgment might have to await this court's decision because this court's remedy of rescission would be difficult to achieve after a state judgment of foreclosure. *But see Sosa v. Fite,* 498 F.2d 114, 117 (5th Cir.1974) (explaining that district court had invalidated state foreclosure sale). It could harm state interests if the state judgment's execution were much delayed for this reason; accordingly, this court will be sympathetic to a motion to expedite proceedings should such delay seem likely.

Defendant's motion to stay federal proceedings is denied

SO ORDERED.