Ruth WHEELER a/k/a Ruth Fish

v.

ADAMS COMPANY, Inc., a Maryland Corporation, Honorable Carl W. Bacharach, Associate Judge, People's Court of Baltimore City, J. Jerome Butler, Chief Constable, People's Court of Baltimore City, Honorable William T. Tippett, Jr., Chief Judge, People's Court of Baltimore City, State of Maryland.

Civ. No. 70-1087-K.

United States District Court,
D. Maryland.

Jan. 25, 1971.

Ronald E. Elberger, Lawrence B. Coshnear and Melvin G. Wachs, Baltimore, Md., for plaintiff.

N. Frank Lanocha, Baltimore, Md., for defendant Adams Co., Inc.

Francis B. Burch, Atty. Gen. of Md., and Francis X. Pugh, Asst. Atty. Gen., for defendants Honorable Carl W. Bacharach and Honorable Wiliam T. Tippett, Jr.

George L. Russell, Jr., City Sol., and J. Warren Eberhardt, Asst. City Sol., Baltimore, Md., for defendant J. Jerome Butler.

FRANK A. KAUFMAN, District Judge.

In issue in this case are (1) the validity under the Federal Constitution of the replevin procedures of the People's Court of Baltimore City,[1] both facially and as applied to plaintiff herein as an indigent defendant in a replevin proceeding in that Court; and (2) the right of such a defendant to have initially determined in a federal court suit, instituted after the commencement and during the pendency of such state court replevin action, alleged violations of the Federal Truth-in-Lending Act, 15 U.S.C. § 1601 et seq. Preliminarily, questions concerning 42 U.S.C. § 1983 and 28 U.S.C. § 2283, and the interrelationship of those statutory provisions, are posed. The essential facts, material to determination of the pending motions to dismiss and for summary judgment filed by the several defendants, are either not in dispute or are considered in this opinion in the light most favorable to the plaintiff.

On or about November 1, 1969, one of the defendants, Adams Company, Inc. (Adams), a Maryland corporation, sold to plaintiff, a Baltimore resident, a dinette set, pursuant to a retail installment sales contract. Thereafter, during the following four or five months, plaintiff purchased from Adams under several additional retail installment sales agreements, certain items including a vacuum cleaner, two bicycles, and a living room set. Plaintiff alleges that Adams failed to comply in many particulars with the Federal Truth-in-Lending Act in connection with one or more of those contracts, and that Adams also subsequently violated certain of the provisions of its contractual arrangements with plaintiff.[2]

1. The People's Court of Baltimore City is a court with jurisdiction in civil actions, including, *inter alia*, replevin limited to controversies involving not more than $2500.00. Md.Const. art. IV, § 41A; Code of Public Local Laws of Baltimore City, art. 15–6 (Everstine 1969).

Article IV of the Maryland Constitution was amended in the general election held on November 3, 1970 to provide for the establishment of District Courts. Pursuant thereto, the jurisdiction presently exercised by the People's Court of Baltimore City will pass to a District Court. Md.Const. art. IV, § 41–I(d), as amended (1970), set forth in ch. 789, Laws of Maryland (1969). That amendment, however, does not become effective until the first Monday in July, 1971, ch. 528, § 2 Laws of Maryland (1970), and thus has no effect upon this case at this time.

2. Allegations of the parties and some of the provisions of the contractual documents indicate that all or some of the purchases were made jointly by plaintiff and her common law husband who entered the Armed Services prior to the institution of the state court replevin action. Plaintiff seems to indicate that certain of her payment difficulties resulted from delays in receipt of her husband's Army allotment checks. There is a factual dispute between plaintiff and Adams

On July 16, 1970, Adams filed a Statement of Claim in Replevin in the People's Court of Baltimore City.[3] Judge Carl W. Bacharach of that Court, one of the defendants herein, has affied that on July 16, 1970 an employee of Adams "exhibited to me conditional sales contracts covering the goods sought to be replevied and signed by the defendant, Ruth Wheeler, and satisfied me that the Adams Company, Inc. was entitled to possession of the goods and that the bond tendered was in a proper amount. Thereupon, I signed the writ and bond and a hearing date was set for September 11, 1970. Thereafter, pursuant to request for a continuance filed by defendant, Ruth Wheeler, the hearing was rescheduled for October 13, 1970." [4]

Following Judge Bacharach's Order of July 16, 1970, an employee of Adams, accompanied by an Assistant Constable of the People's Court, acting under the supervision of, and pursuant to the authority of, the defendant Butler, Chief Constable of that Court, entered the plaintiff's home while she was absent and seized certain of the articles sought by Adams in the replevin action. There is a factual dispute concerning whether that entry was made with or without the consent of one or more of plaintiff's teen-age daughters and whether the search for certain of the items sought was conducted in a rummaging fashion.

Plaintiff appears to concede that she was advised that, by filing a *retorno habendo* bond in the amount of $1000 (the same amount as Adams' replevin bond, i. e., double the value of the goods seized), at a cost of $10.00, she could obtain a return of the replevied items. However, plaintiff has affied that she is indigent and cannot afford to purchase such a bond.

Plaintiff seeks injunctive relief under 42 U.S.C. § 1983 [5] against Judges Tippett and Bacharach and Constable Butler, restraining the enforcement of the replevin procedures of the People's Court and also asks for a declaratory judgment pursuant to 28 U.S.C. § 2201, on the grounds that those procedures violate the due process and equal protection principles of the Fourteenth Amendment, and the search and seizure tenets of the Fourth Amendment as made applicable to state action by the Fourteenth Amendment. Plaintiff also alleges facts which raise the question of whether there were Fourth Amendment search and seizure violations in this case in connection with the entry and search of the Wheeler home and the seizure of certain of the replevied items, regardless of the facial validity of the People's Court practices. Additionally,

---

as to whether plaintiff affirmatively or by omission misled Adams into granting credit terms. There are also factual disputes with regard to certain of plaintiff's allegations of Truth-in-Lending Act deficiencies.

3. People's Court of Baltimore City, Case No. A–19665–70.

4. That hearing was further postponed, after institution of this federal suit. By voluntary agreement between Adams and plaintiff, the latter has had, since not long after this action was filed in this Court, and continues to have at this date, possession and use of the replevied articles, with the understanding that the legal status of those replevied items is not thereby disturbed or affected and that such possession and use will continue until this opinion is filed. The underlying purpose of the postponement, after this proceeding was commenced, of the hearing in the People's Court and of the possessory and use arrangements was to permit all parties hereto, and this Court, to consider the issues presented herein with less time pressure upon all concerned.

5. 42 U.S.C. § 1983 provides:
 § 1983. *Civil action for deprivation of rights*

 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

plaintiff seeks a judgment for damages from Adams, including the amount of the finance charges, under 15 U.S.C. § 1640 (e) and 28 U.S.C. § 1337, for the alleged failure by Adams to furnish credit information required by 15 U.S.C. § 1601 et seq., and treble damages for alleged antitrust violations. Injunctive and declaratory relief are also sought against Adams under 15 U.S.C. § 26 and 28 U.S.C. § 2201. Jurisdiction in this case is claimed by plaintiff under 28 U.S.C. § 1343(3) [6] and also under 15 U.S.C. § 1640(e). [6a]

## I

Article IV, § 41A of Maryland's Constitution confers upon the judges of the People's Court of Baltimore City the power to "regulate by rules the administration, procedure and practice of said Court * * *." By statute, Md.Ann. Code art. 52, § 58(k) (1968 Repl.Vol.), the Maryland Rules of Procedure, as promulgated by the Court of Appeals of Maryland, are made applicable to the People's Court of Baltimore City only to the extent the Court of Appeals or the People's Court itself makes them so applicable. Articles 15–11 & 15–19, Code of Public Local Laws of Baltimore City (Everstine 1969), provide for the rules of practice and procedure of the People's Court to be the same as the rules followed in civil actions before justices of the peace. Maryland statutory provisions governing replevin procedure before justices of the peace are set forth in Md. Ann.Code art. 52, §§ 69–72 (1958 Repl. Vol.) and require, *inter alia*, that "[b]efore issuing a writ of replevin the justice shall require and take from the party demanding such writ a bond to the party holding such property, with one or more securities who shall make oath before the said justice that he is or they are worth each double the value of the specific article or articles of property intended to be replevied * * *." (art. 52, § 70).

Chief Judge Tippett has filed an affidavit herein stating, in part:

Because Rule B.Q., Sections 43 and 44 of the Maryland Rules of Procedure, permit the immediate issuance of a writ of replevin upon the filing of an approved replevin bond, without the necessity of filing the declaration in the case until 15 days after the writ has been executed and the property returned to the plaintiff, the judges of this court have never formally adopted the aforesaid B.Q. rule, but have at all times conformed to the procedure set forth in Sections 69–72 of Article 52, Maryland Code 1957 (1968 Replacement Volume) governing replevin procedure before justices of the peace.

Before a statement of claim in replevin is accepted for filing by the court clerk, it is necessary that the writ of replevin and the replevin bond both be signed by one of the People's Court judges. No writ will be signed or bond approved unless the party seeking the writ personally appears before the judge and makes a prima facie showing, satisfactory to the judge, that he is entitled to the writ. Any unpaid conditional vendor seeking return of goods must, among other things, exhibit to the judge an executed conditional installment sales contract providing for retention of title in the conditional vendor until the deferred payment price is fully paid. In addition

---

6. 28 U.S.C. § 1343(3) provides:

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

* * * * *

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

* * * * *

6a. 15 U.S.C. § 1640(e) provides:

(e) Any action under [the Truth in Lending Act] may be brought in any United States district court, or in any other court of competent jurisdiction * * *.

the judge will make such inquiry as he deems necessary to ascertain the value of the goods sought to be replevied, including determination of age and original purchase price, and if the replevin bond tendered appears inadequate, will require the posting of a bond in a proper amount pursuant to provisions of Section 70 of Article 52, Maryland Code 1957 (1968 Replacement Volume), namely, double the value of the goods sought to be replevied.

The constables executing the writs are instructed that they have no authority to, and shall not, force entry into the premises occupied by the defendant and are instructed not to execute the writ in a case where the defendant claims that he is not delinquent in his installment payments, and exhibits receipts to support said contention.[7]

Judge Bacharach, in one of several affidavits filed herein, has stated that—

had a request been made by or on behalf of Ruth Wheeler to advance her case for a hearing together with a representation that she had a meritorious claim or defense but could not secure a *retorno habendo* bond, I would have set the case down for a hearing on the merits as promptly as possible and as

---

7. Judge Tippett's affidavit continues as follows:

> At the time the writ is issued, a hearing date is set and is plainly marked on the writ. At this hearing the defendant is entitled to present any claims or defenses he may have, including a counterclaim or separate suit against any one or more of the plaintiffs as provided for in Section 1 of Part XI of the rules of the People's Court of Baltimore City. * * *
>
> At the time of trial of an action in replevin, the trial judge advises the conditional vendee that he may recover possession of the goods by paying the then delinquent installment payments, etc., and thereafter resume the installment payments provided for in the installment sales contract, and he is further advised that in contracts where the cash price of the goods does not exceed $2,000.00, he may elect to forego his interest in the goods and incur no further liability for the contract price of the goods purchased and consider the contract as cancelled under the provisions of Sections 143, 144 of Article 83 of the Maryland Code, 1957 (1969 Replacement Volume).
>
> Where the conditional vendee expresses a desire to make up the said delinquent installments and obtain possession of the goods, the trial judge will postpone the case to enable him to effect said payment.

In a separate affidavit, Judge Tippett has stated:

> The procedure for *retorno habendo* in a replevin action in the People's Court would follow that set out in Rule BQ 46 of the Maryland Rules of Procedure. It would be necessary for the defendant to file a motion for the return of the property taken under the writ of replevin. The matter would then be set down for a hearing on the question of possession as a preliminary matter, independent of title, and unless it appears that the defendant was in possession by force or fraud or without proper right, the court would order, upon the filing of a *retorno habendo* bond, the return of the property to the defendant.
>
> If a defendant were to aver that he could not obtain, for financial reasons, a *retorno habendo* bond, but that he had a meritorious defense or claim, and if he further were to file a motion to advance the case for a hearing on the merits, the motion would be granted.
>
> In either case, the matter would be set down for hearing immediately or as soon as possible.
>
> Whether or not any procedure involving a *supra retorno habendo* bond is in effect anywhere else, such procedure has not been adopted or followed by the People's Court.
>
> * * * * *

It would appear that, generally, in Maryland, the use of force is not permitted in connection with levy and seizure in a replevin proceeding. 49 Op. Atty.Gen. 395, 396 (Md.1964), *quoting* 2 Poe, Pleading and Practice § 429, p. 420 (5th Ed. 1925):

> It has long been settled that in all cases where the *door is open,* the sheriff may enter upon the defendant's premises and execute the writ, but if it be *closed,* it is not lawful for him, even after demand and refusal, to *break open the door of the defendant* in order to seize the goods. * * * [Emphasis in original.]

*Accord* 14 Op.Atty.Gen. 249 (Md.1929).

promptly as the case would have been set for hearing on a writ of *retorno habendo*.

Judge Tippett has similarly affied as to the availability of an expedited hearing on the merits, to a replevin defendant who is financially unable to obtain a *retorno habendo* bond and who asks for a prompt hearing.[8] Plaintiff addressed no such request to the People's Court, in connection with the matter here in controversy, but claimed in argument before this Court that the availability of an accelerated trial on the merits was unknown by her prior to the filing herein by Judges Tippett and Bacharach of their said affidavits. Plaintiff asserts that that availability is generally unpublicized and unknown.

Replevin has an ancient history. At common law it lay to recover goods "wrongfully taken." 3 Blackstone, Commentaries *146. As commercial transactions increased in number and size, the scope of the writ grew until it became—

> * * * the appropriate remedy in all cases where the object of the suit is to recover possession of specific goods and chattels, to the possession of which the plaintiff claims to be entitled at the time of instituting the suit. * * * [Footnote omitted].

2 Poe, Pleading and Practice, *supra* at § 425.[9]

To be entitled to such a broad writ, however, the plaintiff in the replevin action—

> * * * must prove his right to immediate possession at the time the writ issues * * * and he must sustain the burden of proof. * * *

McClung-Logan Equipment Co. v. Thomas, 226 Md. 136, 144, 172 A.2d 494 (1961).

> * * * [I]n the instance of a defendant who is irresponsible, replevin may prove to be the only effective remedy. [Rhynhart and Schlitz,[10] Civil Practice Before People's Courts and Justices § 19.1, p. 471 (1961 Ed.).]

> * * * * * *

> Modernly, the widest use of replevin as a remedy lies in the enforcement of the rights of a conditional vendor of chattels who delivers possession to the [defendant] or vendee, but who reserves title in himself until the purchase price has been fully paid. * * * The holder of a retail installment contract may replevy without previous demand; * * *. [*Id.* at § 19.8, pp. 474–75.]

Plaintiff asserts that the issuance of a writ of replevin under the People's Court practice and the seizure of chattels held by a purchaser who is allegedly in default under a conditional sales contract, before that purchaser has any notice of the replevin action, constitutes a denial of due process and also results in a search and seizure forbidden by the Fourth Amendment. Further, plaintiff contends that the opportunity given to a non-indigent defendant to repossess the seized goods under a *retorno habendo* bond, pending final adjudication, results in a denial of equal protection to an indigent buyer such as herself. Defendants counter by taking the position that the People's Court replevin process commences with an *ex parte* judicial order which is not issued until the seller establishes a *prima facie* case of its right to possession against a defaulting buyer; that the effectiveness of the replevin remedy would often be paralyzed by notice to a purchaser in advance of seizure since such notice would enable the purchaser

---

8. *See* n. 7, *supra*.

9. *See also* McKinzie v. B. & O. R. R. Co., 28 Md. 161, 174 (1868):

 The action of replevin in this State * * * is a more extensive remedy than in the English Courts, and it is here "appropriately applied to all cases in which the plaintiff seeks to try the title to personal property, and recover its possession."

10. Judge Rhynhart was Chief Judge of the People's Court of Baltimore City from 1941 to 1966. Mr. Schlitz was, in 1961, Chief Attorney of the Legal Aid Bureau of Baltimore City and is presently the Clerk of this Court.

to move or secrete the chattels sought; that an indigent replevin defendant may, if he or she cannot obtain a *retorno habendo* bond, obtain an accelerated People's Court trial; and that therefore the People's Court practice does not violate due process, search and seizure, or equal protection principles.[11]

## II

Plaintiff's claims could be said to be "dependent for [their] existence upon the infringement of property rights," Hague v. C. I. O., 307 U.S. 496, 531, 59 S.Ct. 954, 971, 83 L.Ed. 1423 (1939) (Stone, J., concurring), and, therefore, under Mr. Justice Stone's approach, not within 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3).[12] That approach has recently been adopted by the Fourth Circuit in Weddle v. Director, 436 F.2d 342 (4th Cir., filed December 30, 1970). In *Weddle*, however, Judge Winter wrote that where the "property claim [is] clearly pendent to a claim of denial of personal liberty" (at p. 6 of the slip opinion), the District Court may acquire pendent jurisdiction over the property claim. Such a personal claim would appear to exist in this case, just as it was present, in a somewhat different context, in Santiago v. McElroy, 319 F.Supp. 284 (E.D.Pa., filed October 26, 1970).[13] In that case, the Court, concluding that it had jurisdiction under 28 U.S.C. § 1343(3), stated:

\* \* \* [E]ven assuming *arguendo* that 28 U.S.C. § 1343(3) does not cover property rights and further assuming that plaintiffs' claims are all dependent

11. Initially, plaintiff sought a hearing before a three-judge court under 28 U.S.C. § 2281. That demand was dropped in view of the fact that plaintiff is challenging only a local Baltimore City practice, and not the application of a statewide rule of procedure. Moody v. Flowers, 387 U.S. 97, 101–102, 87 S.Ct. 1544, 18 L.Ed. 2d 643 (1967).

12. In *Hague*, 307 U.S. at 531–532, 59 S.Ct. 954, Mr. Justice Stone expressed his opinion that federal jurisdiction to grant equitable relief is not conferred by 42 U.S.C. § 1983, and 28 U.S.C. § 1343 (3), its jurisdictional counterpart, when

for their existence upon the taking of household goods, we find that this case involves much more than mere property rights. The dispossession and sale of household belongings may leave the low income family—already operating at subsistence level—without cribs, beds, dishes, chairs and other necessities of life. \* \* \* Accordingly, we decide that we have jurisdiction over plaintiffs' constitutional claims.[12]

12. The Second Circuit, in Escalara v. N.Y.C. Housing Authority, 425 F.2d 853 (C.A. 2, 1970),[13a] used a different route to find that § 1343(3) gives jurisdiction over the claim that property has been taken without procedural due process. Therein the court decided that the civil right/property right distinction drawn by Justice Stone in *Hague* was valid, but it then gave that distinction a curiously restrictive reading by holding that the right not to be deprived of property without *procedural* due process is a civil right.

[Emphasis in original.] [At p. 291.]

Further support for the conclusion that this case presents claims of personal liberty and not merely property claims is found in Judge Winter's opinion in Caulder v. Durham Housing Authority, 433 F.2d 998 (4th Cir., filed November 6, 1970). In *Caulder*, dealing with plaintiff's contentions that North Carolina's laws, permitting the termination of plaintiff's lease in a federally assisted public housing project and her eviction therefrom by the Durham Housing Authority without an appropriate prior hearing, violated due process, Judge Winter granted relief under 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983. Judge Winter noted

property rights, as contrasted with personal rights, are in issue, unless the amount in controversy is equal to or in excess of $10,000 (then $3000). In this case, the amount in controversy may be less than $10,000, though plaintiff contends that the total damages, including those sought for Truth-in-Lending and antitrust violations, are $10,000.

13. *Santiago* is further discussed, *infra*, at pp. 656–657.

13a. Cert. denied, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970).

that Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), involved the question of whether "procedural due process required notice, hearing and administrative adjudication before benefits were terminated rather ·than after" (*Caulder, supra,* 433 F.2d at p. 1002). After quoting as follows from *Goldberg* (at p. 1003):

> * * * The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be "condemned to suffer grievous loss," and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication. Accordingly, as we have said in Cafeteria & Restaurant Workers Union [Local 473, AFL–CIO] v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748–1749, 6 L.Ed.2d 1230, [1236] (1961), "consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." (Footnotes eliminated.)

Judge Winter wrote (at pp. 1003–1004):

> The "privilege" or the "right" to occupy publicly subsidized low-rent housing seems to us to be no less entitled to due process protection than entitlement to welfare benefits which were the subject of decision in *Goldberg* or the other rights and privileges referred to in *Goldberg*.
>
> * * * * * *
>
> Given the premise that the due process clause applies, *Goldberg* also defines the scope of its application. We fully agree with the Second Circuit's conclusion in Escalera v. New York City Housing Authority, 425 F.2d 853 [13b] (2 Cir. 1970), that *Goldberg* is equally applicable to the hearing to be afforded tenants of public housing before the determination to evict them.

Succinctly stated, *Goldberg* requires (1) timely and adequate notice detailing the reasons for a proposed termination, (2) an opportunity on the part of the tenant to confront and cross-examine adverse witnesses, (3) the right of a tenant to be represented by counsel, provided by him to delineate the issues, present the factual contentions in an orderly manner, conduct cross-examination and generally to safeguard his interests, (4) a decision, based on evidence adduced at the hearing, in which the reasons for decision and the evidence relied on are set forth, and (5) an impartial decision maker. We refer to *Goldberg* and *Escalera* for further elaboration of these requirements.[3]

3. Both *Goldberg* and *Escalera* also recognize the possibility that in some instances the right to procedural due process must bend to a compelling governmental interest in summary adjudication. "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." Cafeteria & Restaurant Workers Union, Local 473 [AFL-CIO] v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed. 2d 1230 (1961). We do not foreclose this possibility here. But this case was decided on motion to dismiss, and governmental interests, if any, competing with plaintiff's apparent rights have not been developed in this record. If there are compelling competing governmental interests, they may be developed on remand and weighed by the district court, which may then decide the effect to be given them.

■ The importance of the availability and use of essential household furniture may well, at least under some circumstances, approach or even equal that of occupancy of and noneviction from a residence. Therefore, in the context of viewing the facts of this case as favorably as possible from plaintiff's point of view, this Court will assume the existence of that equation. Accordingly, this Court concludes that this Court has jurisdiction in this case under 28 U.S.C. § 1343(3) to entertain plaintiff's conten-

13b. *See* n. 13a, *supra.*

tions of violations of 42 U.S.C. § 1983, regardless of the amount of damages involved.[13c]

 Defendants, however, assert that this Court should decline to exercise such jurisdiction, at least at this time. It is true that plaintiff has not exhausted her state remedies in connection with any of the relief she seeks herein. Plaintiff could so exhaust in a number of ways, including by way of counterclaim and/or defense, in the pending People's Court replevin suit instituted by Adams.[14] However, a plaintiff is not required to exhaust state remedies before proceeding in a federal forum under 42 U.S.C. § 1983. Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); McNeese v. Board of Education, 373 U.S. 668, 671, 83 S.Ct. 1433, 10 L.Ed. 2d. 622 (1963); Monroe v. Pape, 365 U. S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Nor should the abstention doctrine, which "contemplates that deference to state court adjudication only be made where the issue of state law is uncertain," Harman v. Forssenius, 380 U.S. 528, 534, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50 (1965), be applied as such in this case with regard to plaintiff's section 1983 contentions, since the People's Court replevin procedures, at least in their essential outlines, are clear. Thus, the application of general abstention principles is not called for in connection with the section 1983 issues in this proceeding.[15]

There remains, however, the more substantial bar of 28 U.S.C. § 2283.[16] This Court is not unmindful of the persuasiveness and the force of those holdings which conclude that section 1983 actions constitute an exception to the bar imposed by section 2283. *E. g.*, Cooper v. Hutchinson, 184 F.2d 119, 124 (3d Cir.

1950); Landry v. Daley, 288 F.Supp. 200, 223 (N.D.Ill.1968), appeal pending *sub nom.* Boyle v. Landry, 39 U.S.L.W. 3207 (U.S.1970). But in the face of the Supreme Court's reservation of that question, for future decision, in Cameron v. Johnson, 390 U.S. 611, 613 n. 3, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968), and the Fourth Circuit's unequivocal assertion in Tyrone, Inc. v. Wilkinson, 410 F.2d 639, 642 n. (4th Cir. 1969), cert. denied, 396 U.S. 985, 90 S.Ct. 477, 478, 24 L.Ed.2d 449, after noting the contrary positions in Cooper v. Hutchinson and in Landry v. Daley that:

The Supreme Court has expressly left open the question whether suits under 42 U.S.C. § 1983 constitute an exception to 28 U.S.C. § 2283. Cameron v. Johnson, 390 U.S. 611, 613 n. 3, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968); Dombrowski v. Pfister, 380 U.S. 479, 484 n. 2, 85 S.Ct. 1116, 14 L.Ed. 22 (1965). *We have held that they do not.* Baines v. City of Danville, 337 F.2d 579 (4th Cir. 1964), cert. denied, Chase v. McCain, 381 U.S. 939, 85 S.Ct. 1772, 14 L.Ed.2d 702 (1965). Accord, Goss v. Illinois, 312 F.2d 257 (7th Cir. 1963); Sexton v. Barry, 233 F.2d 220 (6th Cir. 1956). Contra, Cooper v. Hutchinson, 184 F.2d 119 (3d Cir. 1950); Landry v. Daley, 288 F.Supp. 200 (N.D.Ill.1968). See also, ALI Study of the Division of Jurisdiction between State and Federal Courts § 1372(7) (Tent.Draft No. 6, 1968) [*emphasis supplied*],

this Court proceeds herein upon the assumption that section 1983 does not constitute an exception to section 2283.

In *Tyrone*, Judge Butzner cited and relied upon Baines v. City of Danville, 337 F.2d 579 (4th Cir. 1964), cert. denied sub

---

13c. *See* n. 12, *supra.*

14. People's Court Rules, Part XI, § 1 (1959).

15. *See* Holmes v. N. Y. City Housing Authority, 398 F.2d 262, 265–68 (2d Cir. 1965); *cf.* Zwickler v. Koota, 389 U.S. 241, 248–252, 88 S.Ct. 391, 19 L.Ed.2d 444 (1963).

16. 28 U.S.C. § 2283 provides:
§ 2283. *Stay of State court proceedings*
A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

nom. Chase v. McCain, 381 U.S. 939, 85 S.Ct. 1772, 14 L.Ed.2d 702 (1965), reh. denied, 385 U.S. 890, 87 S.Ct. 12, 17 L. Ed.2d 121 (1966), in which Judge Haynsworth wrote for the majority (at 593) that section 2283—

> * * * is not a jurisdictional statute. It is a limitation upon the exercise by a District Court of its equity jurisdiction. * * * Since the statute was fathered by the principles of comity, it has been held that the statute should be read in the light of these principles and, though absolute in its terms, is inapplicable in extraordinary cases in which an injunction against state court proceedings is the only means of avoiding grave and irreparable injury. In our view, the congressional command ought to be ignored only in the face of the most compelling reasons * * *. [Footnotes omitted.]

Dissenting on behalf of himself and Judge Bell, then Chief Judge Sobeloff wrote:

> * * * [E]ven if the ordinances are facially constitutional, we think the very exceptional circumstances recognized by the Court in Douglas as justifying injunctive relief exist here. If that is true, then 28 U.S.C.A. § 2283 does not relieve the federal courts of their obligation to protect the plaintiffs' constitutional rights.
>
> Therefore, we cannot agree that the district court had no discretion to entertain the plenary suits on the merits and to issue any restraining orders or injunctions necessary to protect the plaintiffs' rights therein * * *. [at 600]
>
> * * * * * *
>
> * * * Since it is obvious that in the context of this case no other civil remedy could possibly accomplish the Congressional purpose to afford the Negro citizen equal rights, there is every reason to hold that the equitable remedy expressly authorized in 42 U.S.C.A. § 1983 is within the exception set forth in 28 U.S.C.A. § 2283. Cooper v. Hutchinson, 184 F.2d 119, 124 (3 Cir. 1950). [at 601]

In *Baines*, the majority and minority opinions differed, on the facts of that case, concerning the existence of extraordinary or exceptional circumstances requiring 1983 relief in the face of 2283. For reasons developed *infra*, this Court concludes that, in this case, at this time, both the majority and minority standards postulated in *Baines* require this Court not to grant the relief under section 1983 sought herein.

### III

Retail installment sales contracts like those entered into by Adams, as seller, and plaintiff, as purchaser, are subject to carefully devised statutory controls intended to balance the interests of the individual parties and society in general, see, e. g., 15 U.S.C. § 1601 et seq., the Federal Truth-in-Lending Laws; Md. Ann.Code art. 83, § 128 et seq., the Maryland Retail Installment Sales Act; Md. Ann.Code art. 83, § 153A et seq., the Maryland Retail Credit Accounts Act.[17]

In Brunswick Corporation v. J & P, Inc., 424 F.2d 100 (10th Cir., 1970), the Tenth Circuit, after disposing of certain questions under Oklahoma law raised by defendants, purchasers in a replevin action, denied what that Court characterized (at 105) as defendant-appellants'

> * * * additional contention that under the recent Supreme Court case of Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed. 2d 349 (1969) they have been the victims of a taking of property without the procedural due process required by the Fourteenth Amendment.

17. Those laws are part of a general state-federal statutory approach designed to prevent that "possible unconscionability of * * * contracts" in the retail installment field of the type referred to by Judge J. Skelly Wright in Williams v. Walker-Thomas Furniture Company, 121 U.S.App.D.C. 315, 350 F.2d 445, 450 (1965).

Sniadach expressly was a unique case involving, "a specialized type of property presenting distinct problems in our economic system." That case involved wage garnishment without notice or hearing prior to judgment on a promissory note. It is not in the least comparable to the case here on appeal involving enforcement of a security interest. Appellants have contractually agreed that upon default, their creditor Brunswick " * * * may take immediate possession of said property [collateral] and for this purpose the Seller may enter the premises where said property may be and remove the same without notice or demand, and with or without legal process; thereupon all the rights and interests of the Buyer to and in said property shall terminate." Appellants admit that they were in default on the conditional sale, so they cannot now be heard to object to the default procedures they agreed to simply because Brunswick did utilize the legal process of replevin under bond.

In _Laprease v. Raymours Furniture Company_, 315 F.Supp. 716 (N.D.N.Y. 1970), a three-judge district court struck down, as violative of due process and search and seizure principles, New York's replevin statute which permitted "the prehearing seizure of the subject matter of the action without the intervention or order of a judicial officer" (at 718). The items involved in one of the several cases consolidated for hearing in _Laprease_ were "a bed, box-spring and mattress, a highchair, a chest, an eleven piece dinette set, and other household furnishings" (at 719). Those items had been seized from one of the plaintiffs in _Laprease_, a welfare recipient with an ill husband and ten children, after she had been advised by a representative of the replevin plain-

tiff (seller), apparently in the presence of the sheriff, that if plaintiff did not turn over the items, "a forcible entry into her apartment w .ld be made" (_id._). Article 71, § ₁0 of the New York Civil Practice and Rules provided that "[i]f a chattel is secured or concealed in a building or enclosure and it is not delivered pursuant to his demand, the sheriff shall cause the building or enclosure to be broken open and shall take the chattel into his possession." Article 71, § 7102 stated that the sheriff shall seize a chattel "_without_," as the Court noted, "_the intervention of a judicial officer_." (at 721) (emphasis supplied). Thrusting aside the contention that the Fourth Amendment is inapplicable to civil proceedings, see Murray's Lessee v. Hoboken Land and Improvement Co., 59 U.S. (18 How.) 272, 285, 15 L.Ed. 372 (1856),[18] Judge Port wrote for the three-judge court that sections 7102 and 7110 "fail to conform to the strictures of the Fourth Amendment, made applicable by the Fourteenth Amendment, and are unconstitutional on their face" (315 F. Supp. at 722). The Court also concluded that insofar as the New York statute permitted "a prehearing seizure, possibly without notice to the defendant" (_id._), it violated the due process clause, citing Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), and Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). Distinguishing the Tenth Circuit's opinion in _Brunswick_ because of the purchasers' admission therein that they were in default under the conditional sales contract in that case, and the lack of any such admission in the cases consolidated in _Laprease_, Judge Port held:

Procedural due process requires that notice and an opportunity to be

---

18. Cf. Wyman v. James, 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971); See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967); Camara v. Municipal Court, 387 U.S. 523, 87 S. Ct. 1727, 18 L.Ed.2d 930 (1967); Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886); District of Columbia v. Little, 85 U.S.App.D.C. 242, 178 F.2d 13, 17 (1949), aff'd on other grounds, 339 U.S. 1, 70 S.Ct. 468, 94 L.Ed. 599 (1950).

heard be provided the alleged debtor *before* his property is seized pursuant to Article 71, *or at least that the creditor present to a judicial officer the circumstances allegedly justifying summary action.* Article 71's failure to so provide renders it unconstitutional as violative of pr▓▓ural due process. [315 F.Supp. at ▓▓ first emphasis in original; seco▓▓ emphasis supplied.]

\* \* \* \* \*

In conclusion, we hold that the provisions of Article 71 permitting the prejudgment seizure of chattels by the plaintiff in a replevin action without an order of a judge or of a court of competent jurisdiction, are unconstitutional in that they violate the search and seizure provisions of the Fourth Amendment, made applicable to the states under the Fourteenth Amendment, and the provisions further violate the procedural due process, requirements of the Fourteenth Amendment. [at 725.]

In so holding Judge Port refused to decide the issues raised by the equal protection contention, based upon the indigency of the several plaintiffs in *Laprease,* characterizing that contention as one "tak[ing] us into a murky and uncertain area." [19]

In Fuentes v. Faircloth, 317 F.Supp. 954 (S.D.Fla., filed August 21, 1970), a three-judge district court, in a two-to-one decision, citing and considering *Sniadach, Goldberg* and *Brunswick,* but without mention of *Laprease,* upheld the constitutionality of Florida's replevin statute. *Fuentes* involved two conditional sales contracts covering a gas stove and a stereo set. The Florida statute

seemingly permits entry and seizure by force if the purchaser (replevin defendant) resists seizure. Writing for the majority, Judge Dyer noted that *Fuentes* involved "a peaceable entry" (at p. 958) and that "the issue really boils down to this: Whether, absent authorization to break down the door or otherwise enter forcibly, the Fourth Amendment prohibits parties to a conditional sales contract from contracting for peaceable repossession" (at p. 958). In its opinion, the majority expressly refused to determine whether forcible entry would have been constitutional under the circumstances of the case (at p. 958).

In Santiago v. McElroy, *supra,* [20] the defendants distrained upon, pursuant to Pennsylvania's statutory rent distress procedures, household goods of the plaintiffs-lessees. One family of plaintiffs had eight children, was on welfare, and was unable to pay the premium amount of a bond which would have made possible the repossession and use of the goods distrained upon, and to gain a delay in the sale of those goods, pending a hearing on the merits. Seemingly, Judge Joseph Lord, writing for the Court, concluded that "levy and steps taken prior to sale" were not violative of the Fourteenth Amendment (at p. 292 of 319 F.Supp.), but that sale of the seized goods, before a court hearing, would contravene due process requirements. In connection therewith, Judge Lord stated (at p. 292) that functions performed by Pennsylvania officials under that State's distress procedure were acts "under color of law" within the meaning of 42 U.S.C. § 1983. The same would seem equally true of the acts of the defendants herein in connection with replevin procedures.

---

19. Judge Port noted the pendency of Sanks v. Georgia, 225 Ga. 88, 166 S.E.2d 19 (1970), in the Supreme Court, involving the posting of a bond in an eviction proceeding and payment of double rent in the event of an adverse judgment. *Sanks* remains pending in the Supreme Court along with Boddie v. Connecticut, 286 F. Supp. 968 (D.Conn.1968), in which the question of whether an indigent plaintiff

has a constitutional right to be relieved of payment of a court filing fee in a divorce action, is posed. Both *Sanks* and *Boddie* were reargued in the Supreme Court in late November, 1970, 39 U.S. L.W. 3221 (November 24, 1970).

20. *Santiago* is cited and quoted from *supra* at p. 651, in connection with a different issue.

[4] The hearing requirements of *Goldberg*, as enumerated in *Caulder* (*supra* at pp. 651–653), are not met by the replevin practices of the People's Court of Baltimore City. However, there would seem to be much less need for seizure before demand in an eviction proceeding, such as the one under consideration in *Santiago*, than in a replevin action. Accordingly, there would seem little reason for the lack of an advance adversary hearing in an eviction case—and none, as *Goldberg* teaches, before welfare payments are cut off. On the other hand, the contention that surprise, and therefore seizure before a hearing, is necessary to protect the interests of the seller, replevin plaintiff, cannot be dismissed as frivolous. The People's Court requirement of *ex parte* judicial consideration only, prior to the issuance of a writ of replevin, must be considered against that background. Plaintiffs contend that, at least in the absence of a showing by a seller who is a replevin plaintiff that there is a specific reason to believe that a purchaser (replevin defendant) will conceal or dispose of the goods sought to be replevied if the replevin seizure is not carried out without prior notice, any practice which provides only for an *ex parte* hearing prior to seizure falls short of both constitutional due process and search and seizure standards. But seemingly there will be few instances in which a seller who is a would-be replevin plaintiff will be able to allege sufficient specific information about a given purchaser to support the probability that that purchaser will hide or dispose of goods which the seller desires to replevy. Thus, applying, in a civil replevin setting, standards approximating the probable cause requirements of the criminal law as set forth in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), seems unrealistic. Similarly, the provisions of Federal Civil Rule 65(b) that no temporary restraining order may be granted without notice in the absence of "immediate and irreparable injury, loss, or damage" would not seem to meet the realities of the replevin process. The People's Court of Baltimore City has designed its own safeguards in connection with replevin practices. This Court does not believe that those safeguards, including the showing required of replevin plaintiffs, as described by Judges Tippett and Bacharach, fail facially to meet federal constitutional standards.[20a] Granted that due process and search and seizure standards (assuming without deciding herein that the latter apply in civil cases) dictate the greatest possible disclosure before *ex parte* judicial authorization of a replevin levy and seizure, the placing of undue burdens, or even perhaps the rendering of ineffectiveness, upon the replevin process, could well result in the curtailing of credit selling. Whether such curtailment would or would not be advisable is a matter for federal and state legislative bodies and not for the courts. Accordingly, noting the care taken by the federal and Maryland legislatures in connection with protection of retail installment purchasers, this Court concludes that the rules and practices of the People's Court do not, on their face, violate the Federal Constitution's prohibitions against unreasonable searches and seizures,[20b] or

---

21. As noted earlier (at p. 650, *supra*), the Mr. Justice Blackmun wrote, within the last few days (400 U.S. at 318, 91 S.Ct. at 386) : "It is unreasonableness which is the Fourth Amendment's standard." That standard, while enunciated in a welfare context and thus against a completely different factual background, is nevertheless illuminating herein insofar as plaintiff's Fourth Amendment contention is concerned.

20b. If the requirements of due process are met by the *ex parte* process followed by the People's Court, then the practice concerning entry and seizure, about which Judge Tippett has submitted an affidavit, does not facially violate the Fourth Amendment's search and seizure requirements.

its requirements of procedural due process.[21]

■ A further question is of course posed as to whether the application in this case of those rules and practices constitutes any constitutional violation. But, if a forcible entry, or a rummaging search after an entry without force, took place in this case, those occurrences should be considered in terms of whether they violate (1) the replevin law of Maryland and the replevin rules and procedures of the People's Court of Baltimore City, and, if not, (2) federal constitutional standards of due process and/or search and seizure. Both the majority and minority opinions in Baines v. City of Danville, *supra*, teach that 28 U.S.C. § 2283 requires this Court, in the present setting of this case, to permit those questions (dealing with the application of Maryland's replevin laws and also with whether the rules of the People's Court have been violated in this case by forcible entry or by rummaging) to be determined in the prior-instituted state court proceeding in the People's Court of Baltimore City.

## IV

■ There remains, insofar as her section 1983 contentions are concerned, plaintiff's equal protection attack upon the People's Court replevin practices, because they discriminate against an indigent, such as plaintiff herein, who cannot afford to secure and post a *retorno habendo* bond. With full recognition of the aptness of Judge Port's description in Laprease (315 F.Supp. at 724) of that "unequal protection" area "as murky and uncertain," this Court, in this case, cannot bypass the question of whether it is constitutional, as a matter of classification, for a state court to provide that an indigent defendant, in lieu of posting a *retorno habendo* bond, may seek and obtain an accelerated trial on the merits in the replevin proceeding. In answering that question, one must take into account that a replevin defendant, who can afford to post bond, can obtain the immediate return, and thus the almost uninterrupted use and possession, of the replevied goods, as contrasted with the indigent replevin defendant who suffers the loss of what may be essential household items pending the holding of an accelerated trial. It is therefore necessary to determine if there is an appropriate basis for that distinction. The answer would appear to be in the affirmative, impelled by that same recognition of the essentials of the replevin process (i. e., seizure before notice to prevent the destruction or secreting of the items to be replevied), which leads

21. As noted earlier (at p. 650, *supra*), the replevin process has its roots deep in the history of the common law. In that regard, *compare* the *dictum* of Mr. Justice Holmes in Jackman v. Rosenbaum, 260 U.S. 22, 31, 43 S.Ct. 9, 67 L.Ed. 107 (1922), *quoted in* Walz v. Tax Commission, 397 U.S. 664, 678, 90 S.Ct. 1409, 1416, 25 L.Ed.2d 697 (1970) :

"[I]f a thing has been practised for two hundred years by common consent, it will need a strong case for the Fourteenth Amendment to affect it.

*with* the statement in Moragne v. States Marine Lines, 398 U.S. 375, 386, 90 S.Ct. 1772, 1780, 26 L.Ed.2d 339 (1970) :

The most likely reason that the English rule was adopted in this country without much question is simply that it had the blessing of age. * * * Such nearly automatic adoption seems at odds with the general principle, widely accepted during the early years of our Nation, that while "our ancestors brought with them * * * [the] general principles [of the common law] and claimed it as their birthright; * * * they brought with them and adopted only that portion which was applicable to their situation." * * * The American courts never made the inquiry whether this particular English rule, bitterly criticized in England, "was applicable to their situation," and it is difficult to imagine on what basis they might have concluded that it was. [Citations omitted.]

this Court to hold the People's Court replevin procedures to be nonviolative of procedural due process.[22] However, if the replevin process is to be upheld on that ground in the face of an equal protection challenge, the speed with which the accelerated trial is held must indeed be swift in order to equate to the fullest extent possible the opportunities of the indigent replevin defendant with those of the non-indigent. And the availability of such accelerated procedure must of course be appropriately made known to each replevin defendant and to the bar and public at large. If, in a given case, the indigent is not afforded a speedy trial, and is required to do without essential household goods such as beds, that indigent would seem to be the subject of that type of unequal treatment because of indigency which cannot be said to be reasonably required by the essentials or objectives of the replevin remedy. Such treatment would constitute a violation of equal protection principles. But, again, as with the due process issues in this case, the teachings of *Baines* require this Court to permit the state court, in the prior-instituted state court proceeding, the opportunity to apply, without violation of equal protection tenets, its own rules of practice and procedure.

## V

The final and seemingly novel ingredient in this case poses the question of whether plaintiff's allegations of violations of the Federal Truth-in-Lending Law, which became effective May 29, 1968, require this Court to assume jurisdiction in this case with respect to those issues, and if so, of the entire controversy, including the section 1983 questions, which otherwise, as stated *supra*, this Court, applying 28 U.S.C. § 2283 and *Baines*, declines to determine on the merits at this time. 15 U.S.C. § 1640 (e) [23] confers upon this Court jurisdiction to entertain an original action alleging violations of that new law. But nothing in the Truth-in-Lending Act or in its legislative history gives any indication that the Congress intended that a federal court should, under a procedure which could roughly be analogized to removal, exercise the jurisdiction conferred by section 1640(e) to determine alleged violations of that Act with respect to one or more sale-purchase transactions which are themselves already the subject of a prior-instituted and pending state court replevin proceeding. Therein, those alleged Truth-in-Lending Act violations can be asserted in defense or by way of counterclaim, if the plaintiff herein (defendant therein) so desires.[24] If a federal court is required to exercise its jurisdiction under section 1640(e) each time a purchaser replevin defendant in a state court action elects to file a subsequent Truth-in-Lending complaint in federal court, seemingly a purchaser defendant in *any* state court collection suit will be able so to do, with the result that there will not only be an avalanche of collection litigation in every federal court, but there will also be, at the very least, a race to see which court, state or federal, first reaches the Truth-in-Lending issues, the resolution of which may be factually and/or legally determinative of at least some of the important aspects of the controversy between the seller and the buyer.

Absent a clear congressional command, the relationship between two courts, and particularly between a state

22. *See* Whitney v. State Tax Comm. of New York, 309 U.S. 530, 542, 60 S.Ct. 635, 640, 84 L.Ed. 909 (1940), where Mr. Justice Frankfurter wrote: "Differences in circumstances beget appropriate differences in law."

23. See n. 6a *supra*, in which section 1640 (e) is set forth.

24. People's Court Rules, Part XI, § 1.

and a federal court, dictates that the second court in which such issues are raised exercise its inherent power to stay its inherent hand under the circumstances of a case such as this one. *See* Landis v. North American Co., 299 U.S. 248, 254–255, 57 S.Ct. 163, 81 L.Ed. 153 (1936); Amdur v. Lizars, 372 F.2d 103 (4th Cir. 1967). In *Amdur* (at 106), Judge Sobeloff reasoned that the *Landis* rationale "is equally applicable where the prior proceedings are in the state court" and noted that "[t]he Second Circuit has repeatedly affirmed the discretionary character of a federal district court's power to stay diversity action during the pendency of *state* court proceedings." (Emphasis in original). Judge Sobeloff's statement would seem no less applicable in a proceeding brought under 15 U.S.C. § 1640(e) than in a diversity case.[25]

## VI

For the reasons set forth in this opinion, this Court will stay further consideration of the issues presented in this case until a final determination is made in the case now pending in the People's Court of Baltimore City or until developments in that suit require this Court, either under the *Baines* doctrine, or under this Court's inherent power to discontinue its own stay order, to exercise its jurisdiction under 28 U.S.C. § 1343 (3) and 42 U.S.C. § 1983 and/or 15 U.S. C. § 1640(e), and to reach the merits of those contentions stated hereby by plaintiff but not determined herein at this time. Because of the importance of certain of the holdings in this opinion, and because the within stay order may not be an appealable order, see Amdur v. Lizars, *supra* at 105–106, this Court will, if requested by any party hereto, certify this case for interlocutory appeal at this time under 28 U.S.C. § 1292(b).

It is so ordered.

25. *See also* Bandag, Inc. v. Saliga, 314 F. Supp. 432 (D.Md.1970), discussing both *Landis* and *Amdur*, in which this Court also noted the broad discretionary power of a court to withhold declaratory relief.